IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES R. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. |
| | ) |
| THE HON. JOHN CARNEY, | ) |
| Governor of the State of Delaware, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF UNDER 42 U.S.C. §1983**

**INTRODUCTION**

1. Plaintiff James R. Adams brings this action pursuant to 42 U.S.C. §1983 to have that portion of Article IV, Section 3 of the Constitution of the State of Delaware requiring that judges in Delaware be selected based, in part, on their political affiliation, and excluding members of minority political parties, be declared unconstitutional as being in violation of the right to freedom of political association guaranteed by the First Amendment to the Constitution of the United States.

**PARTIES**

2. Plaintiff James R. Adams is a graduate of Ursinus College and Delaware Law School. He member of the Bar of the State of Delaware. He resides in New Castle County, Delaware. After three years in private practice, he went to work for the Delaware Department of Justice. There, he served as Assistant State

Solicitor under Attorney General Beau Biden.  He has also served as Deputy Division Director of the Family Division, which handles cases involving domestic violence, child abuse and neglect, child support orders, and juvenile delinquency and truancy. He retired from the Department of Justice on December 31, 2015.  Until recently, he was registered as a Democrat, but is currently registered as an Independent.

3.      Defendant the Hon. John Carney is the Governor of the State of Delaware. Pursuant to Article IV, Section 3 of the Constitution of the State of Delaware, the Governor is responsible for appointing judges to Delaware state courts. Since 1977, Delaware governors have established by executive order a judicial nominating commission to identify highly qualified candidates for judicial appointments.  Ten of the eleven members of the Commission are appointed by the Governor. The president of the Delaware State Bar Association, with the Governor's consent, nominates the eleventh member, who is then appointed by the Governor. The judicial nomination commission provides to the Governor a list of recommended candidates.

**VENUE, SUBJECT MATTER JURISDICTION AND STANDING**

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b), as all of the parties in this action reside in Delaware and all of the events involved in this action took place in Delaware.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as the case arises under the First Amendment to the Constitution of the United States and 42 U.S.C. §1983.

6. Mr. Adams has standing to bring this challenge as he is a member of the Delaware Bar who at various times has desired to apply for a judgeship but has been unable to do so in certain circumstances because he was not of the required political party. As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy. That requirement for standing, however, may be excused only a plaintiff shows that application for the benefit would have been futile. Application would have been futile because Article IV, Section 3 of the Constitution of the State of Delaware mandates political balance, and the Judicial Nominating Commission and the Governor would be required to abide by that law. Because of the political affiliation limitations imposed by the Delaware Constitution, applying for a judgeship in those circumstances would constitute a futile act, thereby excusing Mr. Adams from having to engage in such act to have standing.

## BACKGROUND

7. Article IV, Section 3 of the Constitution of the State of Delaware contains a provision, unique to Delaware, which provides, in pertinent part, that:

> Appointments to the office of the State Judiciary shall at all times be subject to all of the following limitations:

First, three of the five Justices of the Supreme Court in office at the same time, shall be of one major political party, and two of said Justices shall be of the other major political party.

Second, at any time when the total number of Judges of the Superior Court shall be an even number not more than one-half of the members of all such offices shall be of the same political party; and at any time when the number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party, the remaining members of such offices shall be of the other major political party.

Third, at any time when the total number of the offices of the Justices of the Supreme Court, the Judges of the Superior Court, the Chancellor and all the Vice-Chancellors shall be an even number, not more than one-half of the members of all such offices shall be of the same major political party; and at any time when the total number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party; the remaining members of the Courts above enumerated shall be of the other major political party.

Fourth, at any time when the total number of Judges of the Family Court shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

Fifth, at any time when the total number of Judges of the Court of Common Pleas shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

8. Thus, the Constitution of the State of Delaware requires that:

a. A bare majority of the Delaware Supreme Court must be members of "one major political party," with the rest having to be members "of the

other major political party."  Although the Constitution of the State of Delaware does not define the phrase "major political party," the Delaware Code defines it as "any political party which, as of December 31 of the year immediately preceding any general election year, has registered in the name of that party voters equal to at least 5 percent of the total number of voters registered in the State," 15 Del. C. §101(15);

      b.      When there is an even number of judges of the Superior Court, half of the seats must be filled by members of one political party.  Where there is an odd number of judges of the Superior Court, a "bare majority" of the seats must be filled by members of one "major political party" with the remaining seats to be filled by members of "the other major political party";

      c.      When there are an even number of seats of the Supreme Court, the Superior Court and the Court of Chancery, not more than half of those seats must be held by members of the same political party.  If there are an odd number of the total seats amongst those three courts, no more than a bare majority may be filled by members of one "major political party," and the remaining seats "shall be of the other major political party";

      d.      In the Family Court and the Court of Common Pleas, if there are an even number of seats, no more than half of those seats may be held by members of the same political party.  If there are an odd number of seats, members of the same political party may constitute only a bare majority of the total number of seats.

9. When the Judicial Nominating Commission sends out notices of judicial vacancies (examples of which are attached hereto as Exhibit A), the notices state which political party will be considered for a given opening.

10. The First Amendment to the Constitution of the United States of America states, in pertinent part, that "Congress shall make no law…abridging…the right of the people peaceably to assemble." This clause has given rise to what is known as the "freedom of association."

11. Under the First Amendment freedom of association, the government may not exclude anyone from public employment on the basis of their political affiliation. The basic right of political association is assured by the First Amendment to the United States Constitution and is protected against state infringement by the Fourteenth Amendment.

12. It is well settled that a state may not condition hiring or discharge of employees in a way which infringes on their right to political association. It is equally well established that conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition.

13. There are two recognized exceptions to the constitutional restriction on employment based on political association: (i) where the position is high enough that the job has direct influence on policy, or (ii) where the employee's private political beliefs would interfere with the discharge of his or her public duties.

14. Neither of those exceptions apply here. Delaware judges have consistently stated that it is the job of the Legislature, and not the courts, to set policy. And no one suggests that, other than appearing before the Legislature to request funding, Delaware judges have any policy-related interaction with government officials.

15. Further, Delaware judges of both political parties have served the State honorably, without fear or favor. There has never been occasion to question a judge's ruling as being based on his or her political affiliation. As such, there is no basis to conclude that a judge's private political beliefs would interfere with the performance of his or her public duties.

16. Several rationales have been offered over the years for the benefits of a politically balanced judiciary. None of them stand up to analysis, and none of them are sufficient to overcome the high burden necessary to overcome First Amendment protections. They are addressed below:

    a. It has been said that a politically balanced judiciary helps emphasize the expertise and independence of the judiciary. Delaware already has a built-in incentive to maintain the high quality of its judiciary. As part of its effort to continue to attract and maintain entity formations and related litigation in Delaware (with corporate franchise taxes being a significant part of Delaware's revenue), Delaware touts the high quality and expertise of its judiciary in addressing corporate

and commercial issues. This does not rationally come from political affiliation or balance, but rather from selecting judges for their knowledge, intellectual rigor and sense of justice. Those qualities are not the exclusive province of one political party, and the absence of a political balance requirement would free the Governor to choose from either political party to draw on the expertise of a candidate belonging to the other major party without generating partisan political repercussion. The absence of political balance poses no risk to the State's ability to find and seat the best and the brightest.

      b.    It is also been said that political balance is necessary to insure that the courts are fair and impartial. Yet the other 49 states do not require political balance, and while there may be complaints about the fairness of a ruling (as there no doubt are similar gripes about the occasional Delaware ruling), there is no evidence that Delaware's rulings are either more or less fair and impartial than the rulings of any other state (or, for that matter, the federal judiciary). Moreover, Canon 2, Rule 2.5(A) of the Delaware Judges Code of Judicial Conduct provides that "[a] judge should be unswayed by partisan interests, public clamor, or fear of criticism." One federal court of appeals has stated that "Partisan balance amongst the judges who comprise the court, alone, has little bearing on impartiality." *Common Cause Indiana v. Individual Members of the Indiana Election Com'n*, 800 F.3 913, 924 (7th Cir. 2015).

  c. It has been suggested that political balance assures that election fraud issues (which have not been an issue in Delaware) are not decided purely (as opposed to mostly) by one party.  This proposition improperly assumes that the governor of one party will fill the courts with political hacks who will do the party's bidding.  The incentives discussed above would protect against a judiciary of political hacks

  d. It has been said that political balance helps insure a non-politicized judiciary.  As stated previously, there are already built-in incentives to avoid that appearance.  Moreover, there is no assurance that decisions of a given judge or a panel of the Delaware Supreme Court would be decided lockstep with their political party's position.

  e. It has been said that political balance has helped attract people of exceptional ability and dedication to serve as judges. Again, those qualities are not the province of any one political party, nor is there any basis to suggest that, absent political balance, highly-qualified lawyers will be inhibited from applying.  To the contrary, the absence of a requirement of political balance will encourage people, regardless of political affiliation, to seek appointment.

 17. As shown above, none of the arguments set forth above satisfies the high burden necessary to overcome the First Amendment freedom of association.

18.     Article IV, Section 3 of the Constitution of the State of Delaware deprives Mr. Adams and all Delaware lawyers of opportunities for judicial appointments because of their political affiliation, in violation of the First Amendment to the Constitution of the United States.

19.     The Governor makes judicial appointments pursuant to the authority granted to him by the Constitution of the State of Delaware. He is currently compelled by the Constitution of the State of Delaware to exercise that authority in a politically discriminatory way.  The Governor takes these actions under color of state law.

WHEREFORE, for the foregoing reasons, plaintiff James R. Adams respectfully requests that this Court enter an Order (i) holding that the provision of Article IV, Section 3 of the Constitution of the State of Delaware mandating political balance on the courts is unconstitutional as it violates the freedom of association guaranteed by the First Amendment to the Constitution of the United States, (ii) permanently enjoining the use of political affiliation as a criterion for the appointment of judges to the Courts of Delaware, and (iii) awarding Mr. Adams his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

        Respectfully submitted,

        /s/ David L. Finger
        David L. Finger (ID #2556)
        Finger & Slanina, LLC
        One Commerce Center
        1201 N. Orange St., 7th fl.
        Wilmington, DE 19801
        (302) 573-2525
        Attorney for plaintiff James R. Adams

Dated:  February 21, 2017

# Exhibit A

# DELAWARE JUDICIAL NOMINATING COMMISSION
## NOTICE OF VACANCY

The Judicial Nominating Commission gives public notice that it has received notification from the Governor that the following office may be filled by the appointment of the Governor with the concurrence of the Senate:

**Resident Judge of the Superior Court of the State of Delaware, Kent County**
(Due to the expiration of the term of the Honorable William L. Witham Jr., who is seeking reappointment)

There are requirements of political balance under Article IV, Section 3 of the Delaware Constitution, and in this case, the appointee must be a member of the Republican Party. In addition, the appointee must be a citizen of the State of Delaware and reside in Kent County. The position provides a current annual salary of $183,444.

*************************************************************************

Persons who meet the legal qualifications of the offices described above are invited to file with the Commission a completed copy of the "Questionnaire for Nominees for Judicial Office." A copy of the Questionnaire can also be obtained online at http://courts.delaware.gov/career/ under the "Judicial Officer Postings" heading. *Please note that the JNC has published a revised version of the Questionnaire, dated March 30, 2016, that includes minor changes to some of the questions and revised instructions for submission, including a reduced number of required paper copies and a requirement to submit a copy of the application materials via email. If you have applied for previous judicial officer positions, please make sure your application reflects the most current version of the Questionnaire.* Any person desiring to suggest candidates is invited to write to the Commission. Any questions about the Questionnaire or the application process should be directed to the JNC Chair.

Completed Questionnaires must be received no later than **12:00 noon on Friday, February 24, 2017** at the below-listed address, with a copy of all application materials submitted via email to JNC@state.de.us. Interviews of candidates will be scheduled thereafter.

Judicial Nominating Commission
Attn: Gregory Brian Williams, Esq., Chairman
c/o Fox Rothschild LLP
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
(302) 622-4211


Dated: February 6, 2017

## DELAWARE JUDICIAL NOMINATING COMMISSION
## NOTICE OF VACANCY

The Judicial Nominating Commission gives public notice that it has received notification from the Governor that the following office may be filled by the appointment of the Governor with the concurrence of the Senate:

### Judge of the Superior Court of the State of Delaware, Kent County
(Due to the expiration of the term of the Honorable Robert Young,
who is not seeking reappointment)

There are requirements of political balance under Article IV, Section 3 of the Delaware Constitution, and in this case, the appointee must be a member of the Republican Party. In addition, the appointee must be a citizen of the State of Delaware. The position provides a current annual salary of $183,444.

**********************************************************************

Persons who meet the legal qualifications of the offices described above are invited to file with the Commission a completed copy of the "Questionnaire for Nominees for Judicial Office." A copy of the Questionnaire can also be obtained online at http://courts.delaware.gov/career/ under the "Judicial Officer Postings" heading. *Please note that the JNC has published a revised version of the Questionnaire, dated March 30, 2016, that includes minor changes to some of the questions and revised instructions for submission, including a reduced number of required paper copies and a requirement to submit a copy of the application materials via email. If you have applied for previous judicial officer positions, please make sure your application reflects the most current version of the Questionnaire.* Any person desiring to suggest candidates is invited to write to the Commission. Any questions about the Questionnaire or the application process should be directed to the JNC Chair.

Completed Questionnaires must be received no later than **12:00 noon on Tuesday, March 14, 2017** at the below-listed address, with a copy of all application materials submitted via email to JNC@state.de.us. Interviews of candidates will be scheduled thereafter.

Judicial Nominating Commission
Attn: Gregory Brian Williams, Esq., Chairman
c/o Fox Rothschild LLP
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
(302) 622-4211

Dated: February 14, 2017