**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAMES R. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:17-CV-00181 (VAC-MPT) |
| | ) | JURY TRIAL DEMANDED |
| THE HON. JOHN CARNEY, | ) | |
| Governor of the State of Delaware, | ) | |
| | ) | |
| Defendant. | ) | |

**THE HON. JOHN CARNEY'S OPENING BRIEF**
**IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Aaron R. Goldstein (#3735)
State Solicitor
Carvel State Building, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Christian Douglas Wright (#3554)
Ryan P. Connell (#5423)
Deputy Attorneys General
Carvel State Building, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400

*Attorneys for The Hon. John Carney*

Date: September 29, 2017

## TABLE OF CONTENTS

TABLE OF CITATIONS ...................................................................................................ii

INTRODUCTION ............................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 2

SUMMARY OF THE ARGUMENTS ........................................................................... 3

STATEMENT OF FACTS .............................................................................................. 4

ARGUMENT .................................................................................................................... 9

I.      THE APPLICABLE LEGAL STANDARDS .................................................. 9

        A.      The Summary Judgment Standard ......................................................... 9

        B.      The Fundamental Requirement of Article III Standing ........................ 9

II.     PLAINTIFF HAS NOT DEMONSTRATED A LIKELY, ACTUAL INJURY IN
        FACT ...............................................................................................................11

        A.      Plaintiff has not met his burden to demonstrate an actual and immediate threat   of
                injury from the Political Balance Requirement because his actions do not
                demonstrate a genuine intent or desire to seek a judicial nomination in the
                future ................................................................................................... 12

        B.      Plaintiff's allegations that he and all Delaware attorneys are deprived of judicial
                opportunities because of the Political Balance Requirement fails to show a
                concrete and particularized threat of future injury ............................... 15

III.    PLAINTIFF'S ABSTRACT, GENERALIZED GRIEVANCES OF PAST HARM FAIL
        TO SATISFY THE PRUDENTIAL ELEMENTS OF STANDING FOR PROSPECTIVE
        RELIEF .......................................................................................................... 16

IV.     JUDICIAL APPOINTMENTS ARE AN EXCEPTION TO THE RESTRICTIONS ON
        THE CONSIDERATION OF POLITICAL AFFILIATION SET FORTH IN *ELROD*
        AND *BRANTI* .............................................................................................. 18

CONCLUSION ............................................................................................................. 20

## TABLE OF CITATIONS

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014)....................................................15

*Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386 (3d Cir. 1998) ...................................19

*Branti v. Finkel,* 445 U.S. 507 (1980) ......................................................................3, 18, 19, 20

*Brown v. Fauver*, 819 F.2d 395 (3d Cir. 1987)...............................................................................11

*Carroll v. City of Phoenix,* 2007 WL 1140400 (D. Ariz. 2007)....................................................19

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014) ........................10, 11

*Davis v. Martin*, 807 F.Supp. 385 (W.D.N.C. 1992)......................................................................19

*Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157 (3d Cir. 2006).......................................14

*Elrod v. Burns*, 427 U.S. 347 (1976) .........................................................................3, 18, 19, 20

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).............................................................10, 16

*Garretto v. Cooperman,* 510 F. Supp. 816 (S.D.N.Y. 1981)........................................................19

*Gratz v. Bollinger*, 539 U.S. 244 (2003)......................................................................................12

*Gregory v. Ashcroft,* 501 U.S. 452 (1991) ..................................................................................20

*Hartig v. Drug Co. Inc. v. Senju Pharm. Co.,* 836 F.3d 261 (3d Cir. 2016)................................10

*Hein v. Freedom From Religion Found, Inc.*, 551 U.S. 587 (2007)..................................................9

*Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174 (E.D.N.Y. 2000)...........15

*Kurowski v. Krajewski,* 848 F.2d 767 (7th Cir. 1988) ..................................................................19

*Levine v. McCabe,* 2007 WL 4441226 (E.D.N.Y. 2007)...............................................................20

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)...................................................1, 11, 13, 14, 15

*McCloud v. Testa*, 97 F.3d 1536 (6th Cir. 1996) ..........................................................................20

*Newman v. Voinovich*, 986 F.2d 159 (6th Cir. 1993) ....................................................................19

*Nichols v. Markell*, 2014 WL 1509780 (D. Del. Apr. 17, 2014) ................................12, 13, 14, 16

*Oxford Assocs. v. Waste Sys. Auth of E. Montgomery Cnty.*, 271 F.3d 140 (3d Cir. 2001) ....16, 17

*Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990) ........................................3, 18

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ......................................10

*Stamicarbon BV v. Sepracor, Inc.*, 2001 WL 253118 (D. Del. Mar. 12, 2001) ............................9

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ....................................................14

*Toll Bros Inc., v. Twp. of Readington*, 555 F.3d 131 (3d Cir. 2009) ................................10, 12, 16

*UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 66 F.3d 621 (3d Cir. 1995) .............11, 17

*Voneida v. Pennsylvania*, 508 F. App'x 152 (3d Cir. 2012) ..........................................12

*Warth v. Seldin*, 422 U.S. 490 (1975) ...............................................................9, 10, 17

*Wittmann v. Island Hosp. Mgmt.*, 2011 WL 689613 (D.N.J. Feb. 18, 2011) ...............................11

*Zold v. Township of Mantua*, 935 F.2d 633 (3d Cir. 1991) ........................................19

## STATUTES AND OTHER AUTHORITIES

U.S. CONST. AMEND. I .....................................................................................2

U.S. CONST. ART. III., § 2 ............................................................................9, 10

DEL. CONST. ART. IV, § 3 ...........................................................................4 , 8

10 U.S.C. § 942(b)(3)(2006) .........................................................................5

15 U.S.C. § 78d(a)(2006) ............................................................................5

Fed. R. Civ. P. 56 (c)(2) .............................................................................9

Randy J. Holland, *Delaware's Business Courts: Litigation Leadership*, 34 J. CORP. L. 771
(2009) ................................................................................................6

Devera B. Scott, et al., The Assault on Judicial Independence and the Uniquely
Delaware Response, 114 PENN ST. L. REV. 217 (2009) ..................................................6

## INTRODUCTION

The Constitution of the State of Delaware sets forth certain obligations aimed at reducing the influence of political patronage in the judicial appointment process by requiring political balance.  The requirement of political balance has been a feature of the Delaware Constitution since 1897.  Plaintiff, a retired Delaware attorney, who ten days before filing this action switched his voter registration from Democratic to Unaffiliated, seeks an order invalidating these long-standing political balance requirements because he alleges that they deprive him and all Delaware attorneys of judicial opportunities.

To preserve the constitutional framework and the roles of the federal courts, jurisdiction must be limited to cases where the plaintiff shows a concrete and particularized injury:

> While it does not matter how many persons have been injured by the challenged action, the party bringing suit must show that the action injures him in a concrete and personal way. This requirement is not just an empty formality. It preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that "the legal questions presented ... will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 581(1992) (Kennedy, J., concurring).  The need for a Plaintiff to show a concrete and particularized injury should be heightened where a Plaintiff attempts to invoke federal court jurisdiction to invalidate the express provisions of a State's Constitution.  Here, Plaintiff is unable to demonstrate a concrete and particularized injury.

In keeping with principles of federalism, federal courts have traditionally allowed for political affiliation to be considered in the appointment of judges.  In fact, the Sixth Circuit has specifically identified political balance requirements as constitutionally appropriate.  Accordingly, the Defendant urges this Court to uphold this long-standing feature of the Delaware Constitution.

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On February 21, 2017, James R. Adams ("Plaintiff") filed the instant lawsuit against Governor John Carney, on behalf of the State of Delaware, claiming that the political balance requirements in Delaware's Constitution for membership on Delaware's constitutional courts violate the First Amendment of the United States Constitution.  (D.I. 1.)  On March 21, 2017, the Defendant filed a motion to dismiss the original Complaint.  (D.I. 6).  Plaintiff filed an Amended Complaint on April 10, 2017.  (D.I. 10).  Defendant answered the Amended Complaint on April 24, 2017.  (D.I. 13).  On May 22, 2017, this Court issued a Scheduling Order setting September 29, 2017 as the deadline for filing summary judgment briefs.  (D.I. 19).  The following is Governor Carney's Opening Brief in Support of his Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENTS

1.      Defendant is entitled to summary judgment because Plaintiff has not satisfied Article III's injury-in-fact requirement regarding his claims seeking to invalidate the Political Balance Component (defined below).  The facts of this case suggest that Plaintiff is unlikely to suffer an actual, imminent, and direct future harm from the Political Balance Component. Plaintiff's claims are abstract, generalized grievances about the Political Balance Component and are insufficient to establish Article III standing.

2.      Prudential considerations regarding standing require dismissal for want of subject matter jurisdiction.  The facts of this case tend to show that Plaintiff's claims are more generalized to the public at large rather than particular to him, so any analysis of the constitutionality of the Political Balance Component would be advisory in nature and would require this Court to decide abstract questions of wide public importance without the existence of an actual case or controversy.

3.      Defendant is entitled to summary judgment because appointment of judges is an exception to requirements set forth by the Supreme Court in *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990)("*Elrod*/*Branti*").  Furthermore, this Court should join the Sixth Circuit in holding that political balancing requirements are exceptions to *Elrod*/*Branti*.

3

## STATEMENT OF FACTS

I.    **THE POLITICAL BALANCE REQUIREMENTS OF THE DELAWARE CONSTITUTION**

Article IV, § 3 of the Delaware Constitution sets forth requirements and limitations with

respect to appointment to the Delaware Courts:

> Appointments to the office of the State Judiciary shall at all times be subject to all of the following limitations:
> First, three of the five Justices of the Supreme Court in office at the same time, shall be of one major political party, and two of said Justices shall be of the other major political party.
> Second, at any time when the total number of Judges of the Superior Court shall be an even number not more than one-half of the members of all such offices shall be of the same political party; and at any time when the number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party, the remaining members of such offices shall be of the other major political party.
> Third, at any time when the total number of the offices of the Justices of the Supreme Court, the Judges of the Superior Court, the Chancellor and all the Vice-Chancellors shall be an even number, not more than one-half of the members of all such offices shall be of the same major political party; and at any time when the total number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party; the remaining members of the Courts above enumerated shall be of the other major political party.
> Fourth, at any time when the total number of Judges of the Family Court shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.
> Fifth, at any time when the total number of Judges of the Court of Common Pleas shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

These provisions are commonly referred to as the "Political Balance Requirement."  The Political

Balance Requirement contains two features.  First, the Political Balance Requirement prohibits

any political party from being represented by more than a "bare majority" of members of the

Supreme Court, the Superior Court, or the collective membership of the Supreme Court, Superior

4

Court and the Court of Chancery in combination.[1]  Second, the remaining members of those three courts must belong to the "other major political party."[2]

Appointments to the Court of Common Pleas and the Family Court are restricted by a Bare Majority Component.  However, no Majority Political Party Component governs appointments to those two courts.  Thus, an independent or minor party candidate would generally be able to apply for vacancies on these courts.

Political balance of the judiciary has been a feature of the Delaware Constitution for 120 years.  In 1897, the concept of a politically balanced judiciary was added to the Delaware Constitution.  *See* Debates and Proceedings of the Constitutional Convention of the State of Del., 1770-71, A-83-84.  The concept has been repeatedly reaffirmed through the amendment process. *See*, *e.g*, H.B 581 (1977), A-97; S.B. 61 (2005), A-102.  The concept of political balance, in some form, is not unique to Delaware courts.  The U.S. Court of Appeals for the Armed Services, for example, is bound by a requirement that "[n]ot more than three of the [five] judges of the court may be appointed from the same political party…"  10 U.S.C. § 942(b)(3)(2006).  Federal boards, such as the Securities and Exchange Commission, are also bound by a political balance requirement.  *See*, *e.g*., 15 U.S.C. §78d(a)(2006).

This long-standing feature is considered by many in the bench and bar to be a strength of the Delaware Court system.  According to former Justice Randy Holland, the "practice of appointing judges and maintaining a balance of power between political parties on its high court has yielded dividends in both the expertise and independence of its judiciary."  Randy J. Holland, *Delaware's Business Courts: Litigation Leadership*, 34 J. CORP. L. 771, 771–72 (2009).  In a law

---

[1] This is referred to herein as the "Bare Majority Component."
[2] This is referred to herein as the "Majority Political Party Component."

review article, Superior Court President Judge Jan Jurden has stated that "[i]n order to ensure that the courts are fair and impartial, the Delaware system goes one step further and requires that the courts be politically balanced." Devera B. Scott, et al., *The Assault on Judicial Independence and the Uniquely Delaware Response*, 114   PENN ST. L. REV. 217, 243 (2009) (co-authored by President Judge Jan R. Jurden).

## II.    THE PLAINTIFF

Until February 13, 2017, Plaintiff was registered as a Democrat.  *Id*. at ¶ 3, *see also* Pl.'s Voter Registration Card, A-55.  He is now "registered as an Independent."  *Id*.  In his deposition, Plaintiff testified that he had "been a democrat [his] whole life and actually worked within the [D]emocratic [P]arty here in Delaware... ."  Adams Tr. 18:10-12, A-19.  He testified that he had become "frustrated with the workings of the [D]emocratic [P]arty… ."  Adams Tr. 18:14-15, A-19.  Plaintiff considers himself to be "a progressive."  Adams Tr. 18:17, A-19.  He feels that he is "much more progressive and liberal than democrats in Delaware."  Adams Tr. 18:18-19, A-19.  He does not "consider people like Senator Carper a progressive [D]emocrat."  Adams Tr. 18:23-24, A-19.  Moreover, he believes "that Governor Markell performed more as a [R]epublican than a progressive [D]emocrat." Adams Tr. 19:2-3 A-20.

Plaintiff further testified that "the one person that [he] really had hoped for and admired was Beau Biden, who [he] did think was progressive."  Adams Tr. 19:9-11, A-20.  However, after the death of Beau Biden, "that didn't leave anybody the [he] could really align with… ."  Adams Tr. 19:16-18, A-20.   Plaintiff also testified that during the last presidential campaign, he "admired Bernie Sanders and what he stood for and what he did and the message he gave out… ."  Adams Tr. 19:22-24, A-20.   He believes that "if Bernie Sanders had been nominated, he would be (sic)

beat Trump in an election… ." Adams Tr. 20:1-3, A-21.   Based on these factors, Plaintiff decided to "change party registration to an independent."  Adams Tr. 20:7-8, A-21.

Professionally, Plaintiff is a law school graduate and a member of the Bar of the State of Delaware. Am. Compl., ¶ 2.  After three years in private practice, Plaintiff went to work at the Delaware Department of Justice ("DOJ").  *Id.*  At the DOJ, Plaintiff served in a number of senior roles.  *Id.*  Plaintiff retired from the DOJ on December 31, 2015.  *Id.*  Following his retirement, Plaintiff "went on emeritus status with the bar."  Adams Tr. 5:3-4, A-6.  He testified that his plan was to "kind of take a sabbatical in '16."  Adams Tr. 5:5, A-6.  He went back to active status at the beginning of 2017.  Adams Tr. 5:6, A-6.  He further testified that after ending his "sabbatical," becoming a judge "was really the only thing that [he] hadn't done in [his] career that [he] really wanted to do."  Adams Tr. 6:12-14, A-7.  He has not pursued other career opportunities since returning to active status.  Adams Tr. 6:16-18, A-7.

Plaintiff contends that "at various times [he] has desired to apply for a judgeship but has been unable to do so in certain circumstances because he was not of the required political party." Am. Compl. at ¶ 6.  In Plaintiff's Amended Complaint, he pleaded that he was interested in applying for a vacancy left by the retirement of Justice Randy Holland from the Delaware Supreme Court. *Id.* at ¶ 8.  Plaintiff's Amended Complaint also references an opening on the Superior Court due the retirement of Judge Robert Young.  *Id.*  However, the Amended Complaint does not state whether Plaintiff was interested in applying for that vacancy.  *Id.*  Notably, Plaintiff took no effort to obtain any sort of judicial relief geared toward ensuring that an application would be considered for either of those positions.  At this point Plaintiff "has no knowledge of what judicial positions may become open in the next year."  Adams Int. Resp., A-52 .  He claims that "[h]e would seriously consider and apply for any judicial position for which he feels he is qualified."  Adams Int. Resp.,

A- 52.  He believes that he is "qualified to apply for any judicial position."  Adams Tr. 22:14-15, A-23.

In discovery, Plaintiff also indicated that he was interested in applying for several judicial positions in 2014 but was barred because the positions were designated for Republicans.  *See*, *e.g*., Adams Tr. 21:22-22:4, A-22-23.   Interestingly, in 2014 there were also a number of open positions on the Delaware Supreme Court and on the Superior Court that were designated for a Democrat. *See* Notices of Judicial Vacancy, A-43-45.  It is undisputed that Plaintiff did not apply for any of these positions.  Adams Tr. 25:7-8, A-26.

In his Prayer for Relief, Plaintiff asks this Court to "enter an Order (i) holding that the provision of Article IV, § 3 of the Constitution of the State of Delaware mandating political balance on the courts is unconstitutional … [and] (ii) permanently enjoining the use of political affiliation as a criterion for the appointment of judges to the Courts of Delaware… ."  *Id.* at 10.  Thus, Plaintiff asks that the Court invalidate both the Majority Political Party Component and the Bare Majority Component.

## ARGUMENT

## I.    THE APPLICABLE LEGAL STANDARDS

### A.    The Summary Judgment Standard

A movant is entitled to judgment as a matter of law if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2).   Summary judgment, therefore, may be granted, "when no reasonable jury could return a verdict for the nonmoving party." *Stamicarbon BV v. Sepracor, Inc*., 2001 WL 253118, at *2 (D. Del. Mar. 12, 2001).

### B.    The Fundamental Requirement of Article III Standing

Article III of the United States Constitution limits the power of the federal courts to hear only "actual cases and controversies."  U.S. Const. art. III., § 2.  The United States Supreme Court has explained that a "federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action . . . ."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quotation marks and citations omitted). "[F]ederal courts are not empowered to seek out and strike down any governmental acts that they deem repugnant to the Constitution."  *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007).   The Supreme Court has refused to construe federal court jurisdiction to "allow permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers."  *Id.* at 617 (Kennedy, J., concurring).   Rather, the proper role of the federal courts is to "sit solely to decide on the rights of individuals and [they] must refrain from passing upon the constitutionality of an act . . . unless obligated to do so in the proper performance of [the] judicial function, when the question is raised by a party whose interests entitle him to raise it."  *Id.* at 598-99 (internal quotation marks and

citations).  In issues involving state or local government, Article III's limitation on federal judicial power "serves to protect and preserve the principle of dual sovereignty embedded in our founding charter."  *Toll Bros Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (citations omitted).

"A fundamental safeguard on that limitation is the doctrine of standing."  *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  Designed to ensure that federal judicial power is limited to its constitutional role, standing "helps assure that courts will not pass upon . . . abstract, intellectual problems, but adjudicate concrete, living contest[s] between adversaries."  *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 30 (1998) (internal quotation marks and citations omitted).  Without the requirements of standing, the Supreme Court explained, the role of the federal courts would unduly expand and the Judiciary would essentially be permitted to dictate the operations of other branches of government (or other States):

> To permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing government by injunction.

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974).  Standing requires that a "plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.  *Warth*, 422 U.S. at 498-99 (citations omitted).  Because Article III standing is essential to subject matter jurisdiction, the threshold question in every federal case is whether a plaintiff has standing to pursue his claims to relief.  *Hartig Drug Co. Inc. v. Senju Pharm. Co*., 836 F.3d 261, 269 (3d Cir. 2016).

## II.     PLAINTIFF HAS NOT DEMONSTRATED A LIKELY, ACTUAL INJURY IN FACT

Standing has constitutional and prudential components, both of which must be established before a plaintiff can seek redress in federal court. *UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 66 F.3d 621, 625 (3d. Cir. 1995). At bottom, the "irreducible constitutional minimum" of standing contains three elements:

> *First*, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Second*, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Third*, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Aichele*, 757 F.3d at 360 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1997))(emphasis added). These three elements are an indispensable part of the plaintiff's case. *Lujan*, 504 US. 555 at 561. Each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof. *Id.*

"When standing is contested, the injury-in-fact element is often determinative." *Aichele*, 757 F.3d at 361. To demonstrate injury in fact for prospective relief, a party must show that the "threatened injury is real, immediate, and direct." *Id.* (citations omitted); *see also Wittmann v. Island Hosp. Mgmt.*, 2011 WL 689613, at *4 (D.N.J. Feb. 18, 2011) ("[I]n order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat that he or she would again be the victim of an unlawful practice." (citing *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987)). Allegations of past harm do not show actual or imminent harm regarding prospective relief if unaccompanied by any continuing present adverse effects. *Lujan*, 504 U.S. at 565. Instead, a

party must show a "palpable and distinct [threat of future] harm" that "affect[s] him in a personal and individual way." *Toll Bros, Inc.*, 555 F.3d at 138.  In the case at bar, Plaintiff cannot show an injury that is sufficiently imminent and distinct to afford him standing to seek prospective relief.

> **A.    Plaintiff has not met his burden to demonstrate an actual and immediate threat of injury from the Political Balance Requirement because his actions do not demonstrate a genuine intent or desire to seek a judicial nomination in the future.**

A party seeking to overturn state law must first establish that he suffers an actual and immediate threat of future injury.  *See, e.g., Voneida v. Pennsylvania*, 508 F. App'x 152, 156 (3d Cir. 2012) ("When [] prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the [challenged] conduct." (citations omitted)).  Plaintiff, however, cannot demonstrate that he is likely to suffer future injury resulting from the Political Balance Requirement.

To demonstrate a real threat of future injury arising from a challenged state law, the party challenging it must adequately demonstrate that but for the restrictions in the law, he would likely attempt to participate in the activity which the law purportedly precludes him from doing.  *Nichols v. Markell*, 2014 WL 1509780, at *11 (D. Del. Apr. 17, 2014).  This requires, at a minimum, a showing of "intent" on the part of the plaintiff to apply for or otherwise seek to engage in that activity in the future.  *See, e.g., Gratz v. Bollinger*, 539 U.S. 244, 261 (2003) (explaining that in order to seek prospective relief, a party must allege an intent to apply in the future).  Thus, where a plaintiff sought to overturn a state law that he claimed unconstitutionally prevented it from being considered for state projects, this Court held that the injury in fact element required the plaintiff to allege particularized facts showing that it was  "sufficiently able and ready" to bid on, and participate in,  future state projects.  *Nichols*, 2014 WL 1509780, at *10.  Ultimately, that plaintiff's noncommittal "aim to compete" for future state projects with "commercially reasonable terms"

failed to adequately make out this showing as it was "excessively conjectural and speculative." *Id.* at *11-12.

Similarly, to proceed with his claim, Plaintiff must demonstrate that he intends to seek a state judgeship in the future. Like the plaintiff in *Nichols*, the facts of this case do not suggest that Plaintiff is likely to seek a judicial nomination. Notably, he has not applied for a position on either of the courts that he now contends he is interested sitting on. Since submitting an application for a Family Court Commissioner position in 2009, he has applied for *no* judicial positions. Plaintiff contends that he was interested in judicial positions on the Supreme and Superior Courts in 2014, but could not apply because he was a Democrat. Interestingly, in 2014 there were vacancies on both the Supreme Court and the Superior Court which were not restricted to Republicans. *See*, *e.g*, Adams Dep. Ex. 1-3, A-43-46 . Plaintiff did not apply for these positions. Between 2009 and the end of 2016, there were a number of openings on Delaware courts that Plaintiff could have applied for. *See*  Notices of Judicial Vacancy A-43-45; A-107-117.[3]  His lack of prior demonstrated interest does not suggest a current intent to seek a judicial nomination. When coupled with his 2017 switch in bar status and his switch in political affiliation a mere ten days before filing suit, it appears more likely that Plaintiff is litigating a long-standing intellectual concern, rather than actively seeking consideration for a place on the bench.[4]

Not only must Plaintiff evince an intent to apply for future judicial vacancies, he must further demonstrate a ***concrete plan*** for doing so. *See Lujan*, 504 U.S. at 563-64. Undefined

---

[3] This is not intended to be an exhaustive list of judicial openings. It is merely intended to demonstrate that Plaintiff had an opportunity to apply for openings but did not.

[4] Plaintiff noted in his deposition that he had been discussing the unconstitutionality of this provision for 15-20 years. *See* Adams Tr. 14:16-16:15, A-15-17.  He noted that an "up-and-coming attorney is not going to challenge… political balance…because it will have a negative impact on their career…"  Adams Tr. 15:21-16:1, A-16-17.

"'someday' intentions—without any description of concrete plans, or indeed even any specification of *when* that someday will be—do not support a finding of the 'actual or imminent' injury required to establish standing." *Lujan*, 504 U.S. at 564 (emphasis in original); *see also Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009) (finding allegations that a plaintiff "want[s] to go" to a particular area insufficient to demonstrate a real threat of future harm). "[B]ald assertion[s]" of an intent to apply for judicial opportunities in the future, without more, are insufficient to show an actual and imminent injury. *Nichols*, 2014 WL 1509780, at *10. The threat of future injury, as the Third Circuit has explained, must "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 161 (3d Cir. 2006).

The facts of this case do not indicate a concrete plan to pursue a future judicial career. First, Plaintiff cannot identify a particular judicial position to which he is interested in applying because he is unaware of what positions may become open in the near future. Adams Int. Resp., A-52. His inability to articulate a position that he expects to become open or even to narrow his interest to a particular court (or a particular county) suggests no concrete plan.

Even his litigation strategy suggests that Plaintiff lacks a concrete plan and is unlikely to suffer actual or imminent injury. Plaintiff now contends that he wished to be considered for a Supreme Court position that was posted during the pendency of this litigation. He also implies, that he was interested in a Superior Court position. Although Plaintiff filed this lawsuit ostensibly aimed at landing a judicial position, Plaintiff took no steps to obtain preliminary relief to make the Governor consider his application or to stay the filling of those vacancies. Thus, the application periods for those positions ran and those seats were ultimately filled.

Having failed to demonstrate facts that suggest he is at risk of "actual or imminent" harm, Plaintiff lacks standing to seek prospective relief.  As such, Plaintiff's Amended Complaint must be dismissed.

**B.    Plaintiff's allegations that he and all Delaware attorneys are deprived of judicial opportunities because of the Political Balance Requirement fails to show a concrete and particularized threat of future injury.**

Even assuming that Plaintiff has articulated an actual and imminent threat of injury from the Political Balance Requirement, Plaintiff does not show injury that is concrete and particularized as to him—the other component to standing's injury-in-fact requirement.  An injury is sufficiently particularized if it affects the plaintiff in a personal and individual way.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014).  Instead of articulating a particularized injury, Plaintiff here acknowledges the exact opposite:  Plaintiff alleges that the injury here is common to the entire legal profession in Delaware, claiming that the "Political Balance Requirement, deprives him and ***all*** Delaware lawyers, of opportunities for judicial appointments because of their respective political affiliations," whatever that affiliation may be.  Am. Compl.  ¶ 20 (emphasis added).[5]

Moreover, Plaintiff has not demonstrated a concrete injury, through plausible allegations specific to him, shwoing how he has developed opportunities[6] in the course of his legal career to

---

[5] To the extent that Plaintiff continues to challenge the Bare Majority Feature of the Delaware Constitution, his standing is particularly weak.  In his Amended Complaint, Plaintiff has (arguably) identified two positions he was interested in filling on the Supreme Court and the Superior Court.  To the extent that Plaintiff can show an injury at this time, it is limited to the requirement that an applicant must be registered with a "major party."   Plaintiff cannot show a causal connection between the Bare Majority Feature and his purported injuries.  *See Lujan*, 504 U.S. at 560 (explaining that the causation component to standing required that the injury be fairly traceable to the challenged conduct).

[6] In cases alleging injury to future business prospects, courts have required the plaintiff to show that it has taken steps to develop the opportunity.  *See, e.g., Jamaica Ash & Rubbish Removal Co. v. Fergusson*, 85 F. Supp. 2d 174, 186 (E.D.N.Y. 2000) (finding no standing where plaintiffs

qualify and apply for judicial positions.   Plaintiff must separate and particularize his purported claims of injury from those of the entire Delaware legal community or the public at large.   *See Toll Bros., Inc.*, 555 F.3d at 138 (observing that though the injury may be widely shared, "it must nonetheless be concrete enough to distinguish the interest of the plaintiff from the generalized and undifferentiated interest [of] every citizen").   Here, despite seeking to strike the Political Balance Requirement in its entirety, Plaintiff has not shown a concrete injury, one that is real distinct and palpable, arising from each provision thereunder.   The abstract nature of Plaintiff's alleged injury is underscored by the fact that Plaintiff has not demonstrated how the Political Balance Requirement prevented him in the past much less how it will prevent him in the future from obtaining a judicial nomination.   Well-pled, plausible allegations don't leave the audience guessing. *See Fed. Election Comm'n*, 524 U.S. at 24 ("The abstract nature of the harm . . . deprives the case of concrete specificity that characterizes those controversies that  . . . prevent[] a plaintiff from obtaining what would, in effect, amount to an advisory opinion.").

### III.   PLAINTIFF'S ABSTRACT, GENERALIZED GRIEVANCES OF PAST HARM FAIL TO SATISFY THE PRUDENTIAL ELEMENTS OF STANDING FOR PROSPECTIVE RELIEF.

Apart from failing to allege a concrete, actual and imminent harm necessary to vest Plaintiff with Article III standing for his claims of prospective relief, the Complaint also falls short of satisfying prudential concerns to justify federal court review.   As the Third Circuit has explained, the aim of prudential standing is to "determine whether the plaintiff is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Nichols*, 2014 WL 1509780, at *17 (citing *Oxford Assocs.*, 271 F.3d at 145).   Characterized as means of judicial

---

challenged a city law yet admitted to having neither done business in the city or having made an application to do business in the city).

self-governance, "[p]rudential considerations constitute a supplemental aspect of the basic standing analysis and address concerns regarding the need for judicial restraint." *Id.* (citing *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cnty.*, 271 F.3d 140, 145 (3d Cir. 2001)). These prudential limitations require that:

> (1) a litigant "assert his [or her] own legal interests rather than those of third parties," (2) ***courts "refrain from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances***, (3) a litigant demonstrate that her interests are arguably within "the zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based.

*UPS Worldwide Forwarding, Inc.*, 66 F.3d at 626 (emphasis added). Absent these limitations, the Supreme Court observed, "the court would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth*, 422 U.S. at 499.

Here, Plaintiff is asking this Court to decide abstract questions of wide public significance. Plaintiff requests that this Court invalidate an entire section of Delaware's Constitution, a section replete with different requirements for different judicial positions, a section embedded in Delaware's Constitution and developed over one hundred twenty years through constitutional amendments. However, as discussed *supra*, Plaintiff's interest in being considered for a judicial position is questionable and not well supported by the facts of the case.

The timing of events in this case also raises question about what Plaintiff is trying to accomplish in this case. First, Plaintiff changed his political affiliation a mere ten days before filing suit. Moreover, Plaintiff also changed his bar status from "emeritus" to "active" shortly before filing suit. When coupled with the lack of demonstrated interest in securing a judicial nomination, it appears likely that Plaintiff is more interested in litigating a novel question of wide

17

public significance than he is in securing specific relief directed toward his own interests.  Having failed to show that judicial intervention is necessary to protect his rights, the case at bar should be dismissed for failing to meet prudential standing requirements.

## IV. JUDICIAL APPOINTMENTS ARE AN EXCEPTION TO THE RESTRICTIONS ON THE CONSIDERATION OF POLITICAL AFFILIATION SET FORTH IN *ELROD* AND *BRANTI*

A trifecta of U.S. Supreme Court cases have laid the groundwork for examining whether political patronage may factor into a decision to terminate a governmental employee based on political affiliation: *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990).  Subsequent case law has extended the tests articulated in these cases to other employment decisions including hiring.

In *Elrod*, the Supreme Court addressed the question of whether public employees could be terminated or threatened with termination solely based on their political affiliation, holding:

> Patronage ... to the extent that it compels or restrains belief and association, is inimical to the process which undergirds our system of government and is "at war with the deeper traditions of democracy embodied in the First Amendment."

*Elrod*, 427 U.S. at 35.  However, the Court went on to note that the "prohibition on encroachment of First Amendment protections is not absolute." *Id.* at 360. Specifically, the Court explained that "there is a need to insure that policies which the electorate has sanctioned are effectively implemented"[7] and that this "interest can be fully satisfied by limiting patronage dismissals to policymaking positions." *Id.* at 372. The Court further observed that "[i]n determining whether an employee occupies a policymaking position, consideration should be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id*. at 368.

---

[7] Few cases address this component, but it is notable in this case that the Political Balance Requirement of the Delaware Constitution exists (at least in theory) to advance a policy that the electorate has sanctioned in multiple votes of the General Assembly.

In the Third Circuit, "[e]ach decision is … fact specific for that case." *Zold v. Township of Mantua*, 935 F.2d 633, 635 (3d Cir. 1991).   The Third Circuit has noted that "[t]he lack of explicit guidance from the Supreme Court and this court thus far, however, results in a greater flexibility on the part of lower courts to determine each case under its own facts and in its own context." *Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 396 (3d Cir. 1998).   There are no Third Circuit cases dealing with judges, but there are a number of Third Circuit cases that apply *Elrod* and *Branti*.   The Third Circuit has "held that a public employer may discharge on the sole basis of political affiliation such employees as a city solicitor and his assistant… and a county's assistant director for public information" *Zold*, 935 F.2d at 636.

Although the Third Circuit has yet to examine *Elrod/Branti* and the appointment of judges, a number of courts have examined the issues of judicial appointments and judicial terminations. The consensus is that judges are policymaking officials and political affiliation can be validly considered in the appointment process.   *See, e.g.*, *Newman v. Voinovich*, 986 F.2d 159, 163 (6th Cir. 1993)(holding "that judges are policymakers because their political beliefs influence and dictate their decisions on important jurisprudential matters"); *Kurowski v. Krajewski*, 848 F.2d 767, 770 (7th Cir. 1988)(noting that "[a] judge both makes and implements governmental policy" and holding that political beliefs may form the basis for appointments of judges *pro tempore*); *Garretto v. Cooperman*, 510 F. Supp. 816, 818-19 (S.D.N.Y. 1981)(holding that workers compensation judges are policymaking positions and can be denied reappointment based on political affiliation); *Carroll v. City of Phoenix*, 2007 WL 1140400, at *8-11 (D. Ariz. 2007)(following the reasoning of *Newman* that a judge is a policymaker); *Davis v. Martin*, 807 F. Supp. 385, 387-88 (W.D.N.C. 1992)(also agreeing with the *Newman* analysis and holding that basing gubernatorial appointments of state judges on political affiliation was not violative of the

Constitution); *Levine v. McCabe*, 2007 WL 4441226, at *6-7 (E.D.N.Y. 2007)(judicial hearing officers are policymaking officials); *see also Gregory v. Ashcroft*, 501 U.S. 452, 467 (1991)(holding that judges are "policymaking level" employees under the Age Discrimination in Employment Act). The Defendant asks this Court to side with the other courts that have weighed in on this issue and find that judges are policymaking officials and thus an exception to *Elrod/Branti*.

The Sixth Circuit has a gone a step beyond the other circuits in articulating four categories of positions that are exceptions to *Elrod/Branti*. The fourth factor is particularly relevant to the case at bar:

> **Category Four**: positions that are part of a *group of positions filled by balancing out political party representation*, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996)(emphasis added).

Defendant urges this Court to examine this case in context and adopt the *McCloud* exception to *Elrod/Branti*. Balancing requirements, like Delaware's, are intended as a check *against* patronage, which *Elrod* found to be "inimical to the process which undergirds our system of government." For over 120 years, the people of Delaware, through their elected officials, have found requiring a political balance on the courts to be a prudent check against the dangers of political patronage appointments. Thus, Defendant respectfully asks this Court to defer to the judgment of the people of the State of Delaware and find that the balancing requirement of the State's Constitution is a valid exception to the general rule of *Elrod* and *Branti*.

## <u>CONCLUSION</u>

**WHEREFORE**, Governor Carney respectfully requests that this Court grant his Motion for Summary Judgment and grant such further relief as this Court deems just and proper.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ *Aaron R. Goldstein*
Aaron R. Goldstein (#3735)
State Solicitor
Carvel State Building, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ *Ryan P. Connell*
Christian Douglas Wright (#3554)
Ryan P. Connell (#5423)
Deputy Attorneys General
Carvel State Building, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400

*Attorneys for The Hon. John Carney*

Date: September 29, 2017