**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

JAMES R. ADAMS,                      :
                                     :
            Plaintiff,               :
                                     :
      v.                             :    C. A. No. 17-181-MPT
                                     :
THE HON. JOHN CARNEY                 :
Governor of the State of Delaware,   :
                                     :
            Defendant.               :

**MEMORANDUM OPINION**

David L. Finger, Esq., Finger & Slanina, LLC, One Commerce Center, 1201 North Orange Street, 7th Floor, Wilmington, DE 19801.
Attorney for Plaintiff James R. Adams.

Christian D. Wright, Department of Justice Civil Division, 820 North French Street, 8th Floor, Wilmington, DE 19801.
Attorney for Defendant the Honorable John Carney, Governor of the State of Delaware.

Ryan Patrick Connell, Department of Justice State of Delaware, Carvel Office Building, 820 North French Street, 8th Floor, Wilmington, DE 19801.
Attorney for Defendant the Honorable John Carney, Governor of the State of Delaware.

## I.    INTRODUCTION

Plaintiff, James R. Adams, filed this Declaratory Judgment and Injunctive Relief action under 42 U.S.C. § 1983, in relation to Article IV, § 3 of the Constitution of the State of Delaware, against the Governor of the State of Delaware, John Carney on February 21, 2017.[1]  Plaintiff seeks review of the constitutionality of the provision, commonly referred to as the "Political Balance Requirement," which prohibits any political party to comprise more than a "bare majority" of the seats in the Supreme Court

---

[1] D.I. 1; *see also* D.I. 10 (amended compliant filed on March 10, 2017).

or Superior Court, or in the Supreme Court, Superior Court, and Court of Chancery combined.[2]  The provision also requires that the remaining seats be comprised of members of the "other major political party."[3]

Presently before the court are the parties' cross-motions for summary judgment, filed on September 29, 2017.[4]  Plaintiff, in his motion, contends Article IV, § 3 of the Constitution of the State of Delaware's "Political Balance Requirement" restricts governmental employment based on political affiliation, which violates the First Amendment of the Constitution of the United States.[5]  Defendant claims that plaintiff failed to establish standing under Article III, § 2 of the Constitution of the United States,[6] and/or contends the position of judge is a "policymaking position," which falls under the well established exception to the restriction of governmental employment based on political affiliation.[7]  For the reasons stated herein, the court grants plaintiff's motion for summary judgment, and denies defendant's motion for summary judgment.

## II.    BACKGROUND

Article IV, § 3 of the Constitution of the State of Delaware was amended to its present language in 1897 to provide the requirements and limitations associated with judicial appointment.[8]  The pertinent section reads:

Appointments to the office of the State Judiciary shall at all times be subject to all of the following limitations:

---

[2] Del. Const. Art. IV, § 3.
[3] *Id.*
[4] *See* D.I. 28; D.I. 31.
[5] D.I. 32 at 2.
[6] U.S. const. Art. III, § 2.
[7] D.I. 29 at 3.
[8] D.I. 30 at A-80-84.

First, three of the five Justices of the Supreme Court in office at the same time, shall be of one major political party, and two of said Justices shall be of the other major political party.

Second, at any time when the total number of Judges of the Superior Court shall be an even number not more than one-half of the members of all such offices shall be of the same political party; and at any time when the number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party, the remaining members of such offices shall be of the other major political party.

Third, at any time when the total number of the offices of the Justices of the Supreme Court, the Judges of the Superior Court, the Chancellor and all the Vice-Chancellors shall be an even number, not more than one-half of the members of all such offices shall be of the same major political party; and at any time when the total number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party; the remaining members of the Courts above enumerated shall be of the other major political party.

Fourth, at any time when the total number of Judges of the Family Court shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

Fifth, at any time when the total number of Judges of the Court of Common Pleas shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.[9]

This provision effectively creates a few limitations:  first, it demands three of the

Delaware Supreme Court Justices be from "one major political party,"[10] and the other

---

[9] Del. Const. Art. IV, § 3.

[10] Major political party is defined as "any political party which, as of December 31, of the year immediately preceding any general election year, has registered in the name of that party voters equal to at least five percent of the total number of voters registered in the State."  15 Del. C. § 101(15).

two be from the "other major political party;"[11] second, at no time may the Delaware

Superior Court or the Delaware Supreme Court, Superior Court, and Court of Chancery

combined, have more than a "bare majority" be comprised of the same "major political

party," and the remainder positions must be of the "other major political party;"[12] and

third, in the Family Courts and the Courts of Common Pleas, one political party may

never possess more than a one judge majority.[13]

Defendant, as Governor of the State of Delaware, is responsible for appointing

judges in compliance with Article IV, § 3 of the Constitution of the State of Delaware.[14]

In 1977, a Judicial Nominating Commission was created by executive order to identify

highly qualified candidates.[15]  To fulfill this role, the Commission provides notice for

existing judicial vacancies.[16]  The required party affiliation is listed within the notice, as

"must be a member of the [Democratic or Republican] party," when necessary because

of Delaware's constitutional limitations.[17]  The Committee then provides a list of qualified

candidates to defendant for selection.[18]

Plaintiff is a graduate of Ursinus College and Delaware Law School.[19]  He is a

resident of New Castle County and a member of the Delaware bar.[20]  Plaintiff worked in

multiple positions before retiring from the Department of Justice on December 31,

---

[11] *Id.*
[12]  Del. Const. Art. IV, § 3.
[13] *Id.*
[14] Del. Const. Art. IV, § 3.
[15] D.I. 32 at 3.
[16] D.I. 30 at A-107-17.
[17] *Id.*
[18] *Id.*
[19] D.I. 10 at 1.
[20] *Id.*

2015.[21]  After retirement, he remained on emeritus status from the bar before returning to active status in 2017.[22]  Until February 13, 2017, plaintiff was registered as affiliated with the Democratic party.[23]  Plaintiff, during that time, applied for one position, Family Court Commissioner.[24]  Now plaintiff is registered as an independent voter.[25]  On February 14, 2017, the Judicial Nominating Commission released a Notice of Vacancy calling for a Republican candidate in the Superior Court of Kent County, following the retirement of the Honorable Robert Young.[26]  On March 20, 2017, the Judicial Nominating Commission also sent a Notice of Vacancy following the retirement of the Honorable Randy Holland, which required a qualified Republican candidate for the Delaware Supreme Court.[27]  Plaintiff, as an unaffiliated voter, was barred from applying to either position.  Plaintiff's amended complaint was filed shortly thereafter on April 10, 2017, to which defendant responded on April 24, 2017.[28]

## III.   STANDARD OF REVIEW

A motion for summary judgment should be granted where the court finds no genuine issues of material fact from its examination of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, and that

---

[21] *Id.* at 1-2.

[22] *Id.* at 4.

[23] D.I. 30 at A-55.

[24] Plaintiff was not selected for the Commissioner position, but such positions are not subjected to the "Political Balancing Requirement" under the Delaware Constitution. D.I. 37 at 1.

[25] D.I. 30 at A-55.

[26] D.I. 1 at Ex. A.

[27] D.I. 10 at 4.

[28] *See id.*; D.I. 13.

the moving party is entitled to judgment as a matter of law.[29]  A party is entitled to

summary judgment where "the record, taken as a whole, could not lead a rational trier of

fact to find for the non-moving party or where the facts are not disputed and there is no

genuine issue for trial."[30]

This standard does not change merely because there are cross-motions for

summary judgment.[31]  Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary
> judgment, and the making of such inherently contradictory claims does not
> constitute an agreement that if one is rejected the other is necessarily
> justified or that the losing party waives judicial consideration and
> determination whether genuine issues of material fact exist.[32]

Moreover, "[t]he filing of cross-motions for summary judgment does not require the court

to grant summary judgment for either party."[33]

## IV.   ANALYSIS

### A.   Defendant's Motion for Summary Judgment Based on Plaintiff's Lack of Standing for Failure to Show Injury in Fact.

For plaintiff to demonstrate standing, there must be a showing of:  (1) an injury in

fact, (2) with a traceable connection to the challenged action, and (3) the requested

relief will redress the alleged injury.[34]  Three principals that must be considered in a

standing analysis are that a party must litigate his own rights and not those of a third-

party, the issue must not be an abstract or generalized grievance, and the harm must

---

[29] *Ford v. Unum Life Ins. Co. of Am.*, 465 F. Supp. 2d 324, 330 (D. Del. 2006).
[30] *Delande v. ING Emp. Benefits*, 112 F. App'x 199, 200 (3d Cir. 2004).
[31] *Appleman's v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[32] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[33] *Krups v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[34] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

6

be in the zone of interest protected by the statute or constitutional provision at issue.[35] Plaintiff must show he is likely to experience actual future injury.[36]  In addition, plaintiff is not required to engage in futile gestures to establish standing.[37]

In the standing analysis, there are two parts of Article IV, § 3 of the Constitution of the State of Delaware involved:  provisions one through three, which contain the term "other political party," and provisions four and five, which only include a bare minimum requirement.[38]  Defendant alleges that plaintiff has no standing because he fails to demonstrate an "actual and immediate threat of future injury" and/or a "concrete and particularized threat of future injury."[39]

Plaintiff does not have standing under provisions four and five.  He has not applied for a judicial position in any of Family Courts or the Courts of Common Pleas.[40] In addition, plaintiff's applications for these positions would not have been futile, because there is no party requirement constitutionally attached to either court.[41]  The only constitutional restriction on these courts is that "not more than a majority of one Judge shall be of the same political party."[42]

As for provisions one through three, which contain the "other political party"

---

[35] *Valley Forge Christian Coll. v. Ams. United for the Separation of Church and State*, 454 U.S. 464, 474-75 (1982).

[36] *Voneida v. Pennsylvania*, 508 F. App'x 152, 156 (3d Cir. 2012).

[37] *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639 (3d Cir. 1995).

[38] Del. Const. Art. IV, § 3.

[39] D.I. 29 at 12, 15.

[40] Although plaintiff applied for Family Court Commissioner in 2009 and was not selected, he does not contend this occurred due to the reasons asserted in his compliant.  D.I. 30 at A-08-09.

[41] *See* Del. Const. Art. IV, § 3; D.I. 30 at A-110-16.

[42] Del. Const. Art. IV, § 3.

7

requirement, defendant fails to demonstrate that plaintiff does not have the requisite standing.  Plaintiff alleged that if he were permitted to apply as an independent, he would apply for a position on either the Delaware Superior Courts or the Delaware Supreme Court.[43]  As an unaffiliated voter, he is barred from applying and any such application would be futile.[44]  As a result, an actual, concrete, and particularized threat of present and future injury to plaintiff is demonstrated.[45]

**B.     Whether a Judge is a Policymaking Position, That is an Exception to the Right of Political Affiliation in Employment Decisions.**

The United States Supreme Court has established that political belief and association are at the core of First Amendment protections.[46]  Governmental employees can not be terminated or asked to relinquish their "right to political association at the price of holding a job."[47]  "Patronage . . . to the extent that it compels or restrains belief and association, is inimical to the process which undergirds our system of government and is at war with the deeper traditions of democracy embodied in the First

---

[43] D.I. 10 at 4; *see Nat'l Ass'n for the Advancement of Multijurisdiction Practice, (NAAMJP) v. Simandle*, 658 Fed. Appx. 127, 133 (3d Cir. 2016) (The plaintiffs "alleged that they would seek admission to the District Court bar if the rules were changed to permit their admission.  Since denial of their application was assured, the rules inflict the alleged injury regardless of whether [the plaintiffs] actually undertook the futile application.").

[44] Del. Const. Art. IV, § 3 (provision one, concerning the Delaware Supreme Court, requires "two of said Justices shall be of the other major political party," and provision two, regarding the Delaware Superior Courts, requires "the remaining members of such offices shall be of the other major political party").

[45] *Valley Forge Christian Coll. v. Ams. United for the Separation of Church and State*, 454 U.S. 464, 474-75 (1982).

[46] *Elrod v. Burns*, 427 U.S. 347, 356 (1976) (plurality opinion).

[47] *Id.* at 356-57.

8

Amendment."[48]  This right of political affiliation has been expanded to government employees regarding their promotion, transfer, and hiring.[49]

The "prohibition on encroachment of First Amendment protections is not absolute," and an exception is recognized, which limits patronage dismissals to "policymaking positions," and requires an analysis of the nature of the employee's responsibilities.[50]  The United States Court of Appeals for the Third Circuit has found "a question relevant in all cases is whether the employee has meaningful input into decision making concerning the nature and scope of a major government program."[51]  A "policymaking position" is a narrow exception applied when "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."[52]

The Court has recognized that "it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered."[53]  In *Branti v. Finkel*, the United States Supreme Court held that the position of Assistant Public Defender was not entitled to the "policymaker" exception.[54]  It found that the factors to be considered in determining whether a position is a policymaking position are

---

[48] *Id.* at 357; *see also Branti v. Finkel*, 445 U.S. 507, 512-18 (1980) (the majority of the court reaffirming the opinion established in *Elrod*).

[49] *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64, 75-80 (1990).

[50] *Elrod*, 427 U.S. at 360, 367.

[51] *Peters v. Del. River Port Auth. of Pa. and N.J.*, 16 F.3d 1346, 1353 (3d Cir. 1994) (internal citations omitted).

[52] *Branti*, 445 U.S. at 518.

[53] *Id.*

[54] "His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the government and to oppose it in adversary litigation."  *Id.* at 519 (quoting *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979)).

whether the position is simply clerical, nondiscretionary or technical in nature, whether the employee "participates in Council discussions, or other meetings, whether the employee prepares budgets, or has authority to hire or fire employees, the salary of the employee, and the employee's power to control others and to speak in the name of policymakers."[55]  A difference in political affiliation is only a proper factor in making employee decisions if it is highly likely "to cause an official to be ineffective in carrying out the duties and responsibilities of the office."[56]  Whether a position involves policy-making is a question of law.[57]

Defendant contends that the role of the judiciary falls within the policymaker exception under the precedent of *Elrod* and *Branti*.[58]  Defendant's argument rests heavily upon the holdings by other circuit courts outside the Third Circuit,[59] and the United States Supreme Court's holding in *Gregory v. Ashcroft*.[60]  Plaintiff contends that the role of the judiciary is not a policymaking position and rests his argument upon a separation of powers, the role of the judiciary, and the Delaware Judges' Code of Judicial Conduct.[61]

The judiciary, although a very important role, is not a policymaking position.  A

---

[55] *Brown v. Trench*, 787 F.2d 167, 169 (3d Cir. 1986).
[56] *Waskovich v. Morgano*, 2 F.3d 1292, 1297 (3d Cir. 1993).
[57] *St. Louis v. Proprotnik*, 485 U.S. 112, 126 (1988).
[58] *See* D.I. 29 at 20.
[59] *See Newman v. Voinovich*, 986 F.2d 159 (6th Cir. 1993) (Judges are "policymakers," whose political affiliations may be considered during the appointment process); *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988) (Governor was entitled to consider judge's political affiliation in making a temporary appointment).
[60] *See* D.I. 29 at 20; *Gregory v. Ashcroft*, 501 U.S. 452, 466 (1991) (finding that legislative intent was not clear as to whether the language "appointee on the policymaking level," included the judiciary).
[61] D.I. 32 at 8-19.

judge does not provide "meaningful input into decision making concerning the nature and scope of a major government program."[62]  To the contrary a judge's role is "to apply, not amend, the work of the People's representatives."[63]  The court may not speak on policymakers behalf, sit in on Congressional discussions, or participate in policymaking  meetings.[64]  The role of the judiciary is not to "hypothesize independently" legislative decision and intent.[65]  "Matters of practical judgment and empirical calculation are for Congress" and the judiciary has "no basis to question their detail beyond the evident consistency and substantiality."[66]  Statutory interpretation, not statutory creation, is the responsibility of the judiciary and therefore, the position of judge is not a policymaking position.

Cases from other circuits, on which defendant relies, are distinguishable.[67]  Both *Newman* and *Kurowski* addressed situations which political affiliation could be considered, but was not constitutionally mandated.[68]  Neither case dealt with a constitutional provision requiring a political affiliation evaluation, nor a complete bar on hiring individuals with minority political party beliefs.  In addition, the Court in *Gregory* addressed the issue of interpreting legislative intent of an exception as it applied to the

---

[62] *Peters v. Del. River Port Auth. of Pa. and N.J.*, 16 F.3d 1346, 1353 (3d Cir. 1994) (internal citations omitted).

[63] *Hayes v. Harvey*, 874 F.3d 98, 111 (3d Cir. 2017) (citing *Henson v. Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017)).

[64] *Brown*, 787 F.2d at 169.

[65] *Matthew v. Lucas*, 427 U.S. 495, 515 (1976).

[66] *Id.* at 515-16.

[67] D.I. 29 at 20.

[68] *See Newman*, 986 F.2d at 159-60 (in the appointment of interim judges, Governor considered candidates based on recommendations from Republican Chairpersons); *Kurowski*, 848 F.2d at 769 (political affiliation could be considered by court when assigning judges *pro tempore*).

Age Discrimination in Employment Act for positions "on the policymaking level."[69]  The

Court addressed whether Congress intended the judiciary be included in the exception,

and whether a Missouri law mandating that members of the judiciary retire at the age

seventy was permissible under the Age Discrimination in Employment Act.[70]  The Court

specifically did not decide the issue of whether the judiciary was a policymaker, and

based its holding on the rationale that "people . . . have a legitimate, indeed compelling,

interest in maintaining a judiciary fully capable of performing the demanding tasks that

judges must perform.  It is an unfortunate fact of life that physical and mental capacity

sometimes diminish with age.  The people may therefore wish to replace some older

judges."[71]  Thus, the phrase "on the policymaking level" is not the equivalent of a

"policymaking" position, on which employment decisions based on political affiliation

may be made.

Delaware requirements are clear, that "[a] judge should be unswayed by partisan

interest" and "family, social, or other relationships" should not influence their conduct or

judgment."[72]  In particular, Canon Four of the Delaware Judges' Code of Judicial

Conduct specifically addresses that the judiciary must refrain from political activity.[73]  A

judge may not act as a "leader or hold any office in a political organization," make

speeches for political organizations or candidates, or "engage in any other political

---

[69] *Gregory*, 501 U.S. at 455-57.

[70] *Id.* at 455-64.

[71] *Id.* at 472.

[72] Del. Judges' Code Judicial Conduct Rule 2.4 (A)-(B).

[73] *See* Del. Judges' Code Judicial Conduct Canon 4.

12

activity."[74]  The Delaware Judicial Code clearly pronounces that political affiliation

should not affect the position.[75]

   Political affiliation is not important to the effective performance of a Delaware

judge's duties.[76]  A Delaware judge may not participate in political activities, hold any

office in a political organization, or allow political affiliation to influence his judgment on

the bench.[77]  Since political affiliation in Delaware cannot "cause an official to be

ineffective in carrying out the duties and responsibilities of the office," it does not meet

the standard for a "policymaking position."[78]

   Article IV, § 3 of the Constitution of the State of Delaware violates the First

Amendment by placing a restriction on governmental employment based on political

affiliation in the Delaware judiciary.  The narrow exception of political affiliation does not

apply because the role of the judiciary is to interpret statutory intent and not to enact or

amend it.[79]  Precedent relied upon by defendant is highly distinguishable and not

applicable to the current situation.[80]  Further, the Delaware Judges' Code of Judicial

Conduct clearly indicates that political affiliation is not a valued trait of an effective

---

   [74] *Id.* at Rule 4.1 (A), (C) (with an exception for activities "on behalf of measures to improve the law, the legal system or the administration of justice").

   [75] *See Leatherbury v. Greenspun*, 939 A.2d 1284, 1292 (Del. 2007) ("Judges must take the law as they find it, and their personal predilections as to what the law should be have no place in efforts to override properly stated legislative will."); *Ewing v. Beck*, 1986 WL 5143, at *2 (Del. Ch. 1986) ("It is a settled principle that courts will not engage in 'judicial legislation' where the statute in question is clear and unambiguous.").

   [76] *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

   [77] Del. Judges' Code Judicial Conduct Rule 2.4 (B); 4.1 (A)(1), (C).

   [78] *Waskovich v. Morgano*, 2 F.3d 1292, 1297 (3d Cir. 1993).

   [79] *Hayes v. Harvey*, 874 F.3d 98, 111 (3d Cir. 2017) (citing *Henson v. Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017)).

   [80] *See Newman v. Voinovich*, 986 F.2d 159, 159-60 (6th Cir. 1993); *Kurowski v. Krajewski*, 848 F.2d 767, 769 (7th Cir. 1988); *Gregory*, 501 U.S. at 455-64.

judiciary.[81]

      As a result of the findings herein, plaintiff's motion for summary judgment (D.I. 31) is granted, and defendant's motion for summary judgment (D.I. 28) is denied.  An appropriate Order shall follow.


Dated:  December 6, 2017            ___/s/ Mary Pat Thynge___
                                        Chief U.S. Magistrate Judge

---

[81] *See* Del. Judges' Code Judicial Conduct Canon 4.