## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JAMES R. ADAMS,                           :
                                          :
         Plaintiff,        :
                                          :
v.                                        :   C. A. No. 17-181-MPT
                                          :
THE HON. JOHN CARNEY : Governor of the
State of Delaware, :
                                          :
         Defendant.        :

## MEMORANDUM OPINION CLARIFYING THE COURT'S OPINION ISSUED DECEMBER 6, 2017

David L. Finger, Esq., Finger & Slanina, LLC, One Commerce Center, 1201 North Orange Street, 7th Floor, Wilmington, DE 19801. Attorney for Plaintiff James R. Adams.

Christian D. Wright, Department of Justice Civil Division, 820 North French Street, 8th Floor, Wilmington, DE 19801.
Attorney for Defendant the Honorable John Carney, Governor of the State of Delaware.

Ryan Patrick Connell, Department of Justice State of Delaware, Carvel Office Building, 820 North French Street, 8th Floor, Wilmington, DE 19801.
Attorney for Defendant the Honorable John Carney, Governor of the State of Delaware.

### I.   INTRODUCTION/PROCEDURAL POSTURE

Plaintiff, James R. Adams, filed this Declaratory Judgment and Injunctive Relief action under 42 U.S.C. § 1983, in relation to Article IV, § 3 of the Constitution of the State of Delaware, against the Governor of the State of Delaware, John Carney on February 21, 2017.[1]  Plaintiff seeks review of the constitutionality of the provision,

---

[1] D.I. 1; *see also* D.I. 10 (amended compliant filed on March 10, 2017).

commonly referred to as the "Political Balance Requirement," which prohibits any political party to comprise more than a "bare majority" of the seats in the Supreme Court or Superior Court, or in the Supreme Court, Superior Court, and Court of Chancery combined.[2] The provision also requires that the remaining seats be comprised of members of the "other major political party."[3]

Under consideration in this clarification opinion are the parties' cross-motions for summary judgment, filed on September 29, 2017.[4] Plaintiff, in his motion, contends Article IV, § 3 of the Constitution of the State of Delaware's "Political Balance Requirement" restricts governmental employment based on political affiliation, which violates the First Amendment of the Constitution of the United States.[5] Defendant claims that plaintiff failed to establish standing under Article III, § 2 of the Constitution of the United States,[6] and/or contends the position of judge is a "policymaking position," which falls under the well established exception to the restriction of governmental employment based on political affiliation.[7] For the reasons stated herein, the court grants plaintiff's motion for summary judgment, and denies defendant's motion for summary judgment.

---

[2] Del. Const. Art. IV, § 3.
[3] *Id.*
[4] *See* D.I. 28; D.I. 31.
[5] D.I. 32 at 2.
[6] U.S. const. Art. III, § 2.
[7] D.I. 29 at 3.

## II. BACKGROUND

Article IV, § 3 of the Constitution of the State of Delaware was amended to its present language in 1897 to provide the requirements and limitations associated with judicial appointment.[8] The pertinent section reads:

> Appointments to the office of the State Judiciary shall at all times be subject to all of the following limitations:
>
> First, three of the five Justices of the Supreme Court in office at the same time, shall be of one major political party, and two of said Justices shall be of the other major political party.
>
> Second, at any time when the total number of Judges of the Superior Court shall be an even number not more than one-half of the members of all such offices shall be of the same political party; and at any time when the number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party, the remaining members of such offices shall be of the other major political party.
>
> Third, at any time when the total number of the offices of the Justices of the Supreme Court, the Judges of the Superior Court, the Chancellor and all the Vice-Chancellors shall be an even number, not more than one-half of the members of all such offices shall be of the same major political party; and at any time when the total number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party; the remaining members of the Courts above enumerated shall be of the other major political party.
>
> Fourth, at any time when the total number of Judges of the Family Court shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.
>
> Fifth, at any time when the total number of Judges of the Court of Common Pleas shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total

---

[8] D.I. 30 at A-80-84.

number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.[9]

This provision effectively creates a few limitations: first, it demands three of the Delaware Supreme Court Justices be from "one major political party,"[10] and the other two be from the "other major political party;"[11] second, at no time may the Delaware Superior Court or the Delaware Supreme Court, Superior Court, and Court of Chancery combined, have more than a "bare majority" be comprised of the same "major political party," and the remainder positions must be of the "other major political party;"[12] and third, in the Family Courts and the Courts of Common Pleas, one political party may never possess more than a one judge majority.[13]

Defendant, as Governor of the State of Delaware, is responsible for appointing judges in compliance with Article IV, § 3 of the Constitution of the State of Delaware.[14] In 1977, a Judicial Nominating Commission was created by executive order to identify highly qualified candidates.[15] To fulfill this role, the Commission provides notice for existing judicial vacancies.[16] The required party affiliation is listed within the notice, as "must be a member of the [Democratic or Republican] party," when necessary because

---

[9] Del. Const. Art. IV, § 3.
[10] Major political party is defined as "any political party which, as of December 31, of the year immediately preceding any general election year, has registered in the name of that party voters equal to at least five percent of the total number of voters registered in the State." 15 Del. C. § 101(15).
[11] *Id.*
[12] Del. Const. Art. IV, § 3.
[13] *Id.*
[14] Del. Const. Art. IV, § 3.
[15] D.I. 32 at 3.
[16] D.I. 30 at A-107-17.

4

of Delaware's constitutional limitations.[17] The Committee then provides a list of qualified candidates to defendant for selection.[18]

Plaintiff is a graduate of Ursinus College and Delaware Law School.[19] He is a resident of New Castle County and a member of the Delaware bar.[20] Plaintiff worked in multiple positions before retiring from the Department of Justice on December 31, 2015.[21] After retirement, he remained on emeritus status from the bar before returning to active status in 2017.[22] Until February 13, 2017, plaintiff was registered as affiliated with the Democratic party.[23] Plaintiff, during that time, applied for one position, Family Court Commissioner.[24] Now plaintiff is registered as an independent voter.[25] On February 14, 2017, the Judicial Nominating Commission released a Notice of Vacancy calling for a Republican candidate in the Superior Court of Kent County, following the retirement of the Honorable Robert Young.[26] On March 20, 2017, the Judicial Nominating Commission also sent a Notice of Vacancy following the retirement of the

---

[17] *Id.*
[18] *Id.*
[19] D.I. 10 at 1.
[20] *Id.*
[21] *Id.* at 1-2.
[22] *Id.* at 4.
[23] D.I. 30 at A-55.
[24] Plaintiff was not selected for the Commissioner position, but such positions are not subjected to the "Political Balancing Requirement" under the Delaware Constitution. D.I. 37 at 1.
[25] D.I. 30 at A-55.
[26] D.I. 1 at Ex. A.

Honorable Randy Holland, which required a qualified Republican candidate for the Delaware Supreme Court.[27] Plaintiff, as an unaffiliated voter, was barred from applying to either position. Plaintiff's amended complaint was filed shortly thereafter on April 10, 2017, to which defendant responded on April 24, 2017.[28]

## III. STANDARD OF REVIEW

### A. Summary Judgment

A motion for summary judgment should be granted where the court finds no genuine issues of material fact from its examination of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, and that the moving party is entitled to judgment as a matter of law.[29] A party is entitled to summary judgment where "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party or where the facts are not disputed and there is no genuine issue for trial."[30]

This standard does not change merely because there are cross-motions for summary judgment.[31] Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[32]

---

[27] D.I. 10 at 4.
[28] *See id.*; D.I. 13.
[29] *Ford v. Unum Life Ins. Co. of Am.*, 465 F. Supp. 2d 324, 330 (D. Del. 2006).
[30] *Delande v. ING Emp. Benefits*, 112 F. App'x 199, 200 (3d Cir. 2004).
[31] *Appleman's v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[32] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

Moreover, "[t]he filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[33]

### B. Standing

"Standing implicates both constitutional requirements and prudential concerns."[34] For plaintiff to demonstrate "the irreducible constitutional minimum of standing" under Article III, § 2 of the United States Constitution ("Article III standing"), there must be a showing of: (1) an injury in fact, (2) with a traceable connection to the challenged action, and (3) the requested relief will redress the alleged injury.[35] Plaintiff must show he is likely to experience actual future injury.[36] In addition, plaintiff is not required to engage in futile gestures to establish Article III standing.[37]

Prudential standing requirements exist "to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those best suited to assert a particular claim."[38] According to the United States Court of Appeals for the Third Circuit, prudential limits require that:

> (1) a litigant assert his or her own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that [his or] her interests are arguably within the zone of interests intended to be protected

---

[33] *Krups v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[34] *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citation omitted).
[35] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (internal quotation marks and citations omitted).
[36] *Voneida v. Pennsylvania*, 508 F. App'x 152, 156 (3d Cir. 2012).
[37] *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639 (3d Cir. 1995).
[38] *Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010) (citations and internal quotation marks omitted).

by the statute, rule or constitutional provision on which the claim is based.[39][40]

"Thus, the limits of prudential standing are used to ensure that those parties who can best pursue a particular claim will gain access to the courts."[41]

## IV. ANALYSIS

### A. Defendant's Motion for Summary Judgment Based on Plaintiff's Lack of Standing for Failure to Show Injury in Fact.

#### 1. Article III standing

With respect to constitutional standing, there are effectively two different parts of Article IV, § 3 of the Constitution of the State of Delaware: provisions one through three, which contain "major political party" and "bare majority" requirements, and provisions four and five, which only include a "bare majority" requirement.[42] Defendant alleges that plaintiff has no standing because he fails to demonstrate an "actual and immediate threat of future injury" and/or a "concrete and particularized threat of future injury."[43]

Plaintiff does not have constitutional standing under provisions four and five. He has not applied for a judicial position in any of the Family Courts or the Courts of Common Pleas.[44] In addition, plaintiff's applications for these positions would not have

---

[39] *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cty.*, 271 F.3d 140,
[40] -46 (3d Cir. 2001) (alteration and citations omitted); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (articulating a similar standard).
[41] *Mariana v. Fisher*, 338 F.3d 189, 204 (3d Cir. 2003).
[42] Del. Const. Art. IV, § 3.
[43] D.I. 29 at 12, 15.
[44] Although plaintiff applied for Family Court Commissioner in 2009 and was not selected, he does not contend this occurred due to the reasons asserted in his compliant. D.I. 30 at A-08-09.

8

been futile, because there is no party requirement constitutionally attached to either court.[45]  The only constitutional restriction on these courts is that "not more than a majority of one Judge shall be of the same political party."[46]

As for provisions one through three, which contain the "major political party" requirement, defendant fails to demonstrate that plaintiff does not have the requisite standing.  Plaintiff alleges that if he were permitted to apply as an independent, he would apply for a position on either the Delaware Superior Courts or the Delaware Supreme Court.[47]  As an unaffiliated voter, he is barred from applying and any such application would be futile.[48]  As a result plaintiff has demonstrated an actual, concrete, and particularized threat of present and future injury.[49]

---

[45] Del. Const. Art. IV, § 3; *see also* D.I. 30 at A-110-16 (documenting vacancies for judicial office in the Family Courts and Courts of Common Pleas in which political affiliation is not a requirement).  In effect, this "bare majority" requirement places no limitations on unaffiliated voters and only affects judicial candidates of a major political party when the bare majority of judicial offices on those courts is filled with individuals affiliated with that major political party.  In that case, only those members of that major political party would be excluded from consideration for judicial office.

[46] Del. Const. Art. IV, § 3 (the "bare majority" requirement).

[47] D.I. 10 at 4; *see Nat'l Ass'n for the Advancement of Multijurisdiction Practice, (NAAMJP) v. Simandle*, 658 Fed. Appx. 127, 133 (3d Cir. 2016) (The plaintiffs "alleged that they would seek admission to the District Court bar if the rules were changed to permit their admission.  Since denial of their application was assured, the rules inflict the alleged injury regardless of whether [the plaintiffs] actually undertook the futile application.").

[48] Del. Const. art. IV, § 3 (provision one, concerning the Delaware Supreme Court, requires "two of said Justices shall be of the other major political party," and provision two, regarding the Delaware Superior Courts, requires "the remaining members of such offices shall be of the other major political party").

[49] *Valley Forge Christian Coll. v. Ams. United for the Separation of Church and State*, 454 U.S. 464, 474-75 (1982).

### 2. Prudential standing

Plaintiff has demonstrated constitutional standing as to the "major political party" provisions of Article IV, § 3 of the Constitution of the State of Delaware. Defendant argues that summary judgment is, nonetheless, appropriate, because plaintiff fails to satisfy the second limit of prudential standing, specifically that the constitutionality of Article IV, § 3 of the Delaware Constitution is an "abstract question[] of wide public significance."[50] Defendant challenges whether plaintiff actually intends to become a judge in the State of Delaware and whether judicial intervention is "necessary to protect his rights[.]"[51]

> Plaintiff responds by addressing each limit of prudential standing:
>
> Adams easily satisfies prudential standing requirements. First, he brought his suit to correct a wrong applicable to him as an anticipated applicant for a judgeship, notwithstanding that the ruling will also affect others similarly situated. Second, this is neither abstract nor a mere generalized grievance. The injury is specific (loss of job opportunity) and targeted (applicable to members of the Delaware Bar seeking judicial appointment, such as Adams). Third, Adams' interests are within the "zone of interests" protected by the First Amendment freedom of political association, as an individual may not be refused government employment based on his or her political affiliation.[52]

In addition, plaintiff argues that the requirements of prudential standing are relaxed in First Amendment cases.[53] Plaintiff contends that the reason for this is that "'[f]acial challenges to overly broad statutes are allowed not primarily for the benefit of the

---

[50] D.I. 29 at 17.
[51] *Id.* at 17-18.
[52] D.I. 35 at 11.
[53] *Id.* at 10 (citing *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988)) ("Where a party raises a facial challenge to a law pursuant to the First Amendment, general prudential standing requirements are relaxed.").

litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court.'"[54] In its reply brief, defendant does not address any of plaintiff's arguments or the case law cited by plaintiff.[55] Instead, defendant repeats its argument and expands on its theory that "[p]laintiff is litigating more of an academic interest[.]"[56]

The court addresses the three prudential limitations in order. First, although defendant questions plaintiff's motivations in bringing suit, these questions do not overcome plaintiff's unrebutted argument that the political affiliation requirements of judicial offices in Delaware directly harm him as an unaffiliated voter. Second, defendant argues that plaintiff asks the court "to decide abstract questions of wide public significance[,]"[57] but this conclusory argument fails to consider that this specific question—whether political affiliation can be a requirement of government employment—is an issue previously addressed by the United States Supreme Court on numerous occasions.[58][59] Third, plaintiff argues, and defendant does not discuss, that plaintiff's rights to political affiliation are within the "zone of interests" protected by the First Amendment.[60] Moreover, plaintiff's argument, that the Supreme Court has

---

[54] *Id.* (quoting *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984)).
[55] D.I. 37 at 3-4.
[56] *Id.*
[57] D.I. 29 at 17.
[58] *E.g.*, *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990); *Branti v. Finkel*, [59] U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976)
[60] *Compare* D.I. 35 at 11, *with* D.I. 37 at 3-4. Plaintiff's grievance about the "major political party" affiliation requirements of Article IV, § 3, is substantially similar to the First Amendment rights of members of major political parties, who are impacted by the "bare majority" requirements, so that the rights of those individuals are within the same zone of interests protected by the First Amendment.

11

recognized that Article III standing is not a requirement for prudential standing in First Amendment cases,[61] is unrebutted.[62]  Rather, the prudential standing question is "whether [a plaintiff] can be expected satisfactorily to frame the issues in the case."[63]

In light of the unrebutted prudential standing arguments, under either standard discussed by plaintiff, the court concludes that plaintiff can satisfactorily frame the issues in this case.[64]  Therefore, plaintiff has prudential standing to challenge, on First Amendment grounds, the entirety of Article IV, § 3 of the Constitution of the State of Delaware.

**B.     Whether a Judge is a Policymaking Position, that is an Exception to the Right of Political Affiliation in Employment Decisions.**  The United States Supreme Court has established that political belief and association are at the core of First Amendment protections.[63]  Governmental employees can not be terminated or asked to relinquish their "right to political association at the price of holding a job."[65]  "Patronage . . . to the extent that it compels or restrains belief and association, is inimical to the process which undergirds our system of government and is at war with the deeper traditions of democracy embodied in the First Amendment."[66]  This right of

---

[61] *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984).
[62] *Compare* D.I. 35 at 10, *with* D.I. 37 at 3-4.
[63] *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. at 958.
[64] In fact, as a retired attorney on a state pension and for whom filing suit is not likely to affect his prospect of future earnings and employment (other than to limit his aspirations to the bench), plaintiff, is in a *far better* position than other Delaware attorneys to challenge these political affiliation requirements.  *See* D.I. 30 at A-15-16.
[63] *Elrod v. Burns*, 427 U.S. 347, 356 (1976) (plurality opinion).
[65] *Id.* at 356-57.
[66] *Id.* at 357; *see also Branti v. Finkel*, 445 U.S. 507, 512-18 (1980) (the majority of the court reaffirming the opinion established in *Elrod*).

political affiliation has been expanded to government employees regarding their promotion, transfer, and hiring.[67]

The "prohibition on encroachment of First Amendment protections is not absolute," and an exception is recognized, which limits patronage dismissals to "policymaking positions," and requires an analysis of the nature of the employee's responsibilities.[68] The United States Court of Appeals for the Third Circuit has found "a question relevant in all cases is whether the employee has meaningful input into decision making concerning the nature and scope of a major government program."[69][70] A "policymaking position" is a narrow exception applied when "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."[71]

The Court has recognized that "it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered."[72] In *Branti v. Finkel*, the United States Supreme Court held that the position of Assistant Public Defender was not entitled to the "policymaker" exception.[73] It found that the factors to be considered in determining whether a position is a policymaking position are whether the position is simply clerical, nondiscretionary or technical in nature, whether

---

[67] *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64, 75-80 (1990).
[68] *Elrod*, 427 U.S. at 360, 367.
[69] *Peters v. Del. River Port Auth. of Pa. and N.J.*, 16 F.3d 1346, 1353 (3d Cir.
[70] ) (internal citations omitted).
[71] *Branti*, 445 U.S. at 518.
[72] *Id.*
[73] "His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the government and to oppose it in adversary litigation." *Id.* at 519 (quoting *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979)).

the employee "participates in Council discussions, or other meetings, whether the employee prepares budgets, or has authority to hire or fire employees, the salary of the employee, and the employee's power to control others and to speak in the name of policymakers."[74] A difference in political affiliation is only a proper factor in making employee decisions if it is highly likely "to cause an official to be ineffective in carrying out the duties and responsibilities of the office."[75] Whether a position involves policymaking is a question of law.[76]

Defendant contends that the role of the judiciary falls within the policymaker exception under the precedent of *Elrod* and *Branti*.[77] Defendant's argument rests heavily upon the holdings by other circuit courts outside the Third Circuit,[78] and the United States Supreme Court's holding in *Gregory v. Ashcroft*.[79] Plaintiff contends that the role of the judiciary is not a policymaking position and directs his argument upon separation of powers, the role of the judiciary, and the Delaware Judges' Code of Judicial Conduct.[80]

---

[74] *Brown v. Trench*, 787 F.2d 167, 169 (3d Cir. 1986).
[75] *Waskovich v. Morgano*, 2 F.3d 1292, 1297 (3d Cir. 1993).
[76] *St. Louis v. Proprotnik*, 485 U.S. 112, 126 (1988).
[77] *See* D.I. 29 at 20.
[78] *See Newman v. Voinovich*, 986 F.2d 159 (6th Cir. 1993) (Judges are "policymakers," whose political affiliations may be considered during the appointment process); *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988) (Governor was entitled to consider judge's political affiliation in making a temporary appointment).
[79] *See* D.I. 29 at 20; *Gregory v. Ashcroft*, 501 U.S. 452, 466 (1991) (finding that legislative intent was not clear as to whether the language "appointee on the policymaking level," included the judiciary).
[80] D.I. 32 at 8-19.

The judiciary, although a very important role, is not a policymaking position.  A judge does not provide "meaningful input into decision making concerning the nature and scope of a major government program."[81,82]  To the contrary a judge's role is "to apply, not amend, the work of the People's representatives."[83]  The court may not speak on policymakers behalf, sit in on Congressional discussions, or participate in policymaking  meetings.[84]  The role of the judiciary is not to "hypothesize independently" legislative decision and intent.[85]  "Matters of practical judgment and empirical calculation are for Congress" and the judiciary has "no basis to question their detail beyond the evident consistency and substantiality."[86]  Statutory interpretation, not statutory creation, is the responsibility of the judiciary and therefore, the position of judge is not a policymaking position.

Cases from other circuits, on which defendant relies, are distinguishable.[87]  Both *Newman* and *Kurowski* addressed situations which political affiliation could be considered, but was not constitutionally mandated.[88]  Neither case dealt with a constitutional provision requiring a political affiliation evaluation, nor a complete bar on

---

[81] *Peters v. Del. River Port Auth. of Pa. and N.J.*, 16 F.3d 1346, 1353 (3d Cir.
[82] ) (internal citations omitted).
[83] *Hayes v. Harvey*, 874 F.3d 98, 111 (3d Cir. 2017) (citing *Henson v. Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017)).
[84] *Brown*, 787 F.2d at 169.
[85] *Matthew v. Lucas*, 427 U.S. 495, 515 (1976).
[86] *Id.* at 515-16.
[87] D.I. 29 at 20.
[88] *See Newman*, 986 F.2d at 159-60 (in the appointment of interim judges, Governor considered candidates based on recommendations from Republican Chairpersons); *Kurowski*, 848 F.2d at 769 (political affiliation could be considered by court when assigning judges *pro tempore*).

hiring individuals with minority political party beliefs. In addition, the Court in *Gregory* analyzed the issue of interpreting legislative intent of an exception as it applied to the Age Discrimination in Employment Act for positions "on the policymaking level."[89] The Court addressed whether Congress intended the judiciary be included in the exception, and whether a Missouri law mandating that members of the judiciary retire at the age seventy was permissible under the Age Discrimination in Employment Act.[90] The Court specifically did not decide the issue of whether the judiciary was a policymaker, and based its holding on the rationale that "people . . . have a legitimate, indeed compelling, interest in maintaining a judiciary fully capable of performing the demanding tasks that judges must perform. It is an unfortunate fact of life that physical and mental capacity sometimes diminish with age. The people may therefore wish to replace some older judges."[91] Thus, the phrase "on the policymaking level" is not the equivalent of a "policymaking" position, on which employment decisions based on political affiliation may be made.

Delaware requirements are clear, that "[a] judge should be unswayed by partisan interest" and "family, social, or other relationships" should not influence their conduct or judgment."[92] In particular, Canon Four of the Delaware Judges' Code of Judicial Conduct specifically addresses that the judiciary must refrain from political activity.[93] A judge may not act as a "leader or hold any office in a political organization," make

---

[89] *Gregory*, 501 U.S. at 455-57.
[90] *Id.* at 455-64.
[91] *Id.* at 472.
[92] Del. Judges' Code Judicial Conduct Rule 2.4 (A)-(B).
[93] *See* Del. Judges' Code Judicial Conduct Canon 4.

speeches for political organizations or candidates, or "engage in any other political activity."[94] The Delaware Judicial Code clearly pronounces that political affiliation should not affect the position.[95]

Political affiliation is not important to the effective performance of a Delaware judge's duties.[96] A Delaware judge may not participate in political activities, hold any office in a political organization, or allow political affiliation to influence his judgment on the bench.[97] Since political affiliation in Delaware cannot "cause an official to be ineffective in carrying out the duties and responsibilities of the office," it does not meet the standard for a "policymaking position."[98]

## V. CONCLUSION

Article IV, § 3 of the Constitution of the State of Delaware violates the First Amendment by placing political affiliation restrictions on governmental employment by the Delaware judiciary.[99] The narrow political affiliation exception does not apply, because the role of the judiciary is to interpret statutory intent and not to enact or

---

[94] *Id.* at Rule 4.1 (A), (C) (with an exception for activities "on behalf of measures to improve the law, the legal system or the administration of justice").

[95] *See Leatherbury v. Greenspun*, 939 A.2d 1284, 1292 (Del. 2007) ("Judges must take the law as they find it, and their personal predilections as to what the law should be have no place in efforts to override properly stated legislative will."); *Ewing v. Beck*, 1986 WL 5143, at *2 (Del. Ch. 1986) ("It is a settled principle that courts will not engage in 'judicial legislation' where the statute in question is clear and unambiguous.").

[96] *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

[97] Del. Judges' Code Judicial Conduct Rule 2.4 (B); 4.1 (A)(1), (C).

[98] *Waskovich v. Morgano*, 2 F.3d 1292, 1297 (3d Cir. 1993).

[99] These restrictions include the "major political party" and "bare majority" requirements discussed herein.

amend it.[100] Precedent relied upon by defendant is highly distinguishable and not applicable to the current situation.[101] Further, the Delaware Judges' Code of Judicial Conduct clearly indicates that political affiliation is not a valued trait of an effective judiciary.[102]

As a result of the findings herein, plaintiff's motion for summary judgment (D.I. 31) is granted, and defendant's motion for summary judgment (D.I. 28) is denied. An appropriate Order shall follow.


Dated: May 23, 2018                             /s/ Mary Pat Thynge
                                                Chief U.S. Magistrate Judge

---

[100] *Hayes v. Harvey*, 874 F.3d 98, 111 (3d Cir. 2017) (citing *Henson v. Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017)).

[101] *See Newman v. Voinovich*, 986 F.2d 159, 159-60 (6th Cir. 1993); *Kurowski v. Krajewski*, 848 F.2d 767, 769 (7th Cir. 1988); *Gregory*, 501 U.S. at 455-64.

[102] *See* Del. Judges' Code Judicial Conduct Canon 4.