**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAMES R. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-00181 MPT |
| | ) | |
| THE HON. JOHN CARNEY, Governor of the State of Delaware, | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE OF PLAINTIFF JAMES R. ADAMS IN OPPOSITION TO DEFENDANT'S MOTION TO STAY COURT'S JUDGMENT ORDER (D.I. 39, 62) PENDING APPEAL**

1. A stay pending appeal is extraordinary relief which is rarely granted because the bar is set particularly high. *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs*., 2013 WL 1277419 at *1, 3 (3d Cir. Feb. 8, 2013).

2. Gov. Carney, as the movant, bears the burden of proving that a stay is warranted based on the following criteria: (1) whether he has made "a strong showing" that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Phil. v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

3. "[W]here the right vindicated by a judicial decision is of paramount constitutional significance, the showing which must be made for grant of a stay is necessarily increased." *Evans v. Buchanan*, 455 F.Supp. 705, 708 (D. Del.1978). *See also Kouba v. Allstate Ins. Co.*, 1981 WL 278 (E.D. Cal. Nov. 2, 1981) ("I do think, however, that the relative importance of the underlying substantive rights adjudicated by the district court should affect the applicant's burden of proof in requesting a stay, notwithstanding the presence of difficult legal questions," citing *Evans*).

4. While the law requires the factors to be balanced against each other, the Third Circuit has not approved a "sliding scale" approach, and Gov. Carney must satisfy his burden as to each element. *Conestoga Wood Specialties Corp.*, WL Op. at *2.

## A. GOV. CARNEY HAS FAILED TO MAKE A STRONG SHOWING THAT HE IS LIKELY TO SUCCEED ON APPEAL.

5. Gov. Carney first suggests that the Court's conclusion that judges are not "policymakers" for the purpose of the First Amendment right to be free of political discrimination in employment will not survive appellate scrutiny. However, this Court's conclusion was based on settled U.S. Supreme Court and Third Circuit precedent establishing the test for determining if one is a "policymaker." Gov. Carney did not address this authority in either his briefing on summary judgment or in his motion to stay. Gov. Carney has not explained how he expects to convince

the Third Circuit to change the rules set forth in those and other cases, or how those principles were incorrectly applied here. As such, there is no "strong showing" that Gov. Carney is likely to succeed on the merits.

6. Gov. Carney says that the Court's determination that judges are not policymakers is "unprecedented." Gov. Carney forgets that he himself submitted such precedent in summary judgment briefing. In *Garretto v. Cooperman*, 510 F.Supp. 816 (S.D.N.Y. 1981), relied upon by Gov. Carney, the District Court stated that "If *Branti* is to be read literally, however, the policymaking responsibilities of the job are of no consequence. The only issue that matters is whether membership in a particular party is a requirement for the effective performance of the duties of the office. *It is absolutely clear that party affiliation is not a requirement for the effective performance of the duties of the office of Compensation Judge*." *Id*. at 819 (italics added). The District Court went on to reject the holding of *Branti*, concluding that the Supreme Court would not adhere to it. *Id.* at 820. Nine years later, however, the Supreme Court disproved the judge by reaffirming the *Branti* rule. *Rutan v. Republican Party if Ill*., 497 U.S. 62, 64 (1990). *See also id*. at 92.

7. Gov. Carney also attempts suggests that the use of the word "discretion" in distinguishing his cases is "irreconcilable" with the Court's ruling. This is makeweight. The use of the word "discretion" merely means that the appointing authority has discretion to consider political affiliation among other factors under

the circumstances of those cases (temporarily filling an interim vacancy in an elected judgeship until the next election). Discretion does not empower the Governor to follow a discriminatory practice. *See Tapley v. Jeffers,* 96 F.3d 921, 928 (7th Cir. 1996) (political affiliation cannot be a motivating factor).[1]

8. Finally, Gov. Carney argues that the Court ruled on the "bare majority" provision, even though the Court found that Adams lacked Article III standing, by finding that he had prudential standing. While the Court did find that Adams satisfied the requirements of prudential standing, it did not suggest this would allow the Court to decide the "bare minimum" provisions as to which the Court found there was no Article III standing.[2]

9. Even if Gov. Carney were correct, this would not result in reversal of the Court's ruling that discrimination in the appointment of judges based on political affiliation is unconstitutional, as the Court found that Adams had proper standing to challenge the practice as to the other Delaware courts.

---

1 The point is illustrated thusly: if a provision of the Delaware Constitution required racial discrimination, and that provision was declared in violation of the U.S. Constitution, the Governor could not then continue the discrimination by saying he was exercising his discretion.

2 The point is merely academic because in any future challenge to the "bare majority" provision (for which Adams now has standing as he applied for and was denied an appointment to the Court of Common Please (Ex. A hereto)), the ruling in this case would be applicable under theories of stare decisis and issue preclusion.

**B. THE IRREPARABLE INJURY TO ADAMS FAVORS DENIAL OF A STAY.**

10. Gov. Carney argues that denial of a stay may result in a violation of Delaware's constitutional scheme for appointing judges.[3] *But see Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute," citation omitted); *Entertainment Merchants Ass'n v. Henry*, 2006 WL 2927884 at *3 (W.D. Okla. Oct. 11, 2006) (same, quoting *Joelner*).

11. On the other hand, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (per Justice Brennan, with two Justices joining and two Justices concurring in result). This principle has played an important role in denying stays pending appeal. *E.g., Conestoga Wood Specialties Corp.,* WL Op. at *7; *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927, 930 (6th Cir. 2002); *American Freedom Defense Initiative v. Metropolitan Transp. Authority*, 889

---

[3] Gov. Carney argues that political balance is a critical component of the Delaware judiciary, to ensure that its courts be viewed as nonpartisan. There is absolutely no evidence that the political balance requirement has ever played any role in or had any effect upon attracting litigants to Delaware courts. Even if it did, Delaware's interest in marketing its courts does not outweigh the interest in upholding First Amendment rights.

F.Supp.2d 606, 614 (S.D.N.Y. 2012). This injury is suffered not merely by Adams, but by all who seek appointment to a judgeship.[4]

12. To the extent both sides claim irreparable injury, where a stay denies federal constitutional rights, the equities do not favor granting a stay. *Latta v. Otter*, 2014 WL 12597162 at *1 (D. Idaho May 14, 2014).[5]

**C. GRANTING A STAY WOULD BE AGAINST THE PUBLIC INTEREST.**

13. The public interest favors protecting constitutional rights. *Fontroy v. Beard*, 2007 WL 1810690 at *5 (E.D. Pa. June 21, 2007) (denying stay); *Harris v. Pernsley*, 654 F.Supp. 1057, 1064 (E.D. Pa. 1987) (in denying stay, " [t]he strongest public interest is in protection of civil rights guaranteed to all by the Constitution of the United States"). Thus, this factor weighs against granting a stay.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, plaintiff James R, Adams respectfully requests that the Court deny Gov. Carney's Motion to Stay.

---

4 Gov. Carney's glib suggestion that Adams' interest is more academic than real is belied by the fact that since the Court has ruled he has twice applied for a judgeship. (Ex. A).

5 The parties have negotiated a briefing schedule for the appeal which will result in briefing being finished earlier than would be usual. Gov. Carney, however, has not yet informed the Third Circuit about this Court's recent rulings.

Respectfully submitted,

/s/ David L. Finger________________
David L. Finger (ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
(302) 573-2525
Attorney for plaintiff James R. Adams

Dated: June 12, 2018

# Exhibit A

1000 West Street
Suite 1400
Wilmington, DE 19801
www.connollygallagher.com

CONNOLLY
GALLAGHER LLP

Arthur G. Connolly, III
Partner
TEL: (302) 888 6318
EMAIL: aconnolly@connollygallagher.com

February 1, 2018

**PERSONAL AND CONFIDENTIAL**
**BY ELECTRONIC AND FIRST CLASS MAIL**

James R. Adams, Esq.
465 Gum Bush Road
Townsend, DE 19734
Jadamslaw1@aol.com

Re: Application for Judicial Appointment
Superior Court, New Castle County

Dear Jim:

On behalf of the Judicial Nominating Commission ("JNC"), I would like to thank you for applying for the position of Judge of the Superior Court of the State of Delaware. I regret to inform you that the JNC will not be forwarding your name to Governor Carney as a prospective nominee for the position at this time.

The JNC gave careful and thorough consideration to your application and had some tough decisions to make in selecting the applicants to be forwarded to Governor Carney for consideration. The election of judicial candidates is a difficult task, particularly when there are a number of well-qualified and distinguished applicants for the same position.

The JNC appreciates your interest in serving the citizens of Delaware as a judicial officer and your participation in the application process. Best wishes in your future endeavors.

Sincerely,

Arthur G. Connolly, III
Acting Chair, Judicial Nominating Commission

agciii

{05368534.DOC.}



Attorneys at Law

WILMINGTON
GEORGETOWN
NEW YORK

**William Bowser**
P 302.571.6601
F 302.576.3282
wbowser@ycst.com

May 8, 2018

**PERSONAL AND CONFIDENTIAL**
**BY ELECTRONIC AND FIRST CLASS MAIL**

James R. Adams, Esq.
465 Gum Bush Road
Townsend, DE 19734
jadamslaw1@aol.com

Re: Application for Judicial Appointment
Court of Common Pleas, New Castle County

Dear Mr. Adams:

On behalf of the Judicial Nominating Commission ("JNC"), I would like to thank you for applying for the position of Judge of the Court of Common Pleas of the State of Delaware. I regret to inform you that the JNC will not be forwarding your name to Governor Carney as a prospective nominee for the position at this time.

The JNC gave careful and thorough consideration to your application and had some tough decisions to make in selecting the applicants to be forwarded to Governor Carney for consideration. The election of judicial candidates is a difficult task, particularly when there are a number of well-qualified and distinguished applicants for the same position.

The JNC appreciates your interest in serving the citizens of Delaware as a judicial officer and your participation in the application process. Best wishes in your future endeavors.

Sincerely,

William Bowser
Chair, Judicial Nominating Commission

WB:jbm
cc: Arthur G. Connolly, III, Esq., aconnolly@connollygallagher.com

01:23180343.1