# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JAMES R. ADAMS,         :

        Plaintiff,        :

v.                   :     C. A. No. 17-181-MPT

HONORABLE JOHN CARNEY,    :
Governor of the State of Delaware  :

        Defendant.      :

## MEMORANDUM ORDER

## I.    INTRODUCTION

Presently before the court are two motions by defendant, the Hon. John Carney,
Governor of Delaware ("defendant" or "Mr. Carney").[1]  The court has discussed the facts
of the case at bar elsewhere in recent orders, and will not repeat them herein.[2]  On
December 6, 2017, in a Memorandum Opinion[3] and Order,[4] the court granted summary
judgment to plaintiff, James R. Adams ("plaintiff" or "Mr. Adams") and denied Mr.
Carney's motion for summary judgment.[5]  Shortly thereafter, Mr. Carney moved for
reconsideration or clarification (the "First Motion for Reconsideration").[6]

While the First Motion for Reconsideration was pending, on January 5, 2018, Mr.
Carney filed a Notice of Appeal with the United States Court of Appeals for the Third
Circuit, seeking review of the court's grant of summary judgment.[7]  In May 2018, the
court addressed several pending motions, including Mr. Carney's First Motion for

---

[1] D.I. 63
[2] D.I. 65; D.I. 60.
[3] D.I. 40.
[4] D.I. 39.
[5] Id.
[6] D.I. 42.
[7] D.I. 50. Defendant also sought review of the court's denial of his motion for
summary judgment. Id.

Reconsideration. At the time, Mr. Carney failed to demonstrate any of the factors relevant to the grant of reconsideration.[8] In addition, the court concluded that Mr. Carney was making a new "argument that [he] did not make in [his] briefing on summary judgment[]" and that this new argument was specifically related to an argument, made by plaintiff in his answering brief in opposition to defendant's motion for summary judgment, that Mr. Carney did not acknowledge, discuss, mention, reference, or attempt to rebut in his reply brief.[9] Therefore, on May 23, 2018, the court denied the First Motion for Reconsideration.[10] On the same day, the court issued a Memorandum Opinion Clarifying the Court's Opinion Issued December 6, 2017[11] accompanied by an Order granting summary judgment to Mr. Adams and denying Mr. Carney's motion for summary judgment.[12]

On June 1, 2018, Mr. Carney filed a motion to stay (the "Motion" or "Motion to Stay") the court's judgment pending appeal.[13] Mr. Adams opposes the Motion to Stay.[14] Following an expedited briefing schedule, the Motion to Stay was fully briefed on June 18, 2018.[15] Two days later, Mr. Carney filed an Amended Notice of Appeal to the Third

---

[8] D.I. 60 at 8–9.

[9] *Id.* at 9–10. At summary judgment, Mr. Carney had the opportunity to read Mr. Adams's briefs, to research the relevant case law, and to rebut Mr. Adams's arguments. Mr. Carney did not take this first bite at the apple. Instead, Mr. Carney sought a second bite at the apple in the form of a "do over" of his summary judgment arguments in his First Motion for Reconsideration. As the court noted, granting Mr. Carney "an opportunity to make arguments he did not make in the briefing" is "beyond the scope of the remedy requested or allowed." *Id.* at 10 (footnote omitted).

[10] *Id.* at 10.

[11] D.I. 61.

[12] D.I. 62.

[13] D.I. 63. On June 1, 2018, Mr. Carney sought expedited briefing on the Motion, D.I. 64, which the court granted on June 4, 2018, D.I. 65.

[14] D.I. 66.

[15] D.I. 67.

Circuit, adding various issues for appeal, including the court's denial[16] of Mr. Carney's First Motion for Reconsideration.[17]

Upon review of the briefs on the Motion to Stay, it is apparent to the court that Mr. Carney seeks yet a third bite[18] at the apple under the guise of arguing likelihood of success on the merits.[19] As if prompted by the court's explanation for why it denied his First Motion for Reconsideration,[20] with an appeal of that motion now pending, Mr. Carney argues to the court that he is likely to succeed on the merits, because the court made "several plain errors of law in [its] ruling."[21] It also appears that Mr. Carney has: (1) read the court's Memorandum Opinion Clarifying the Court's Opinion Issued December 6, 2017,[22] (2) reviewed Section II of Mr. Adams's summary judgment Answering Brief in Opposition,[23] (3) did some legal research, and (4) developed responses to rebut Mr. Adams's summary judgment arguments on standing.[24] Finally, in arguing likelihood of success on the merits, Mr. Carney cites at least two cases that

---

[16] D.I. 60.

[17] D.I. 68.

[18] *See supra* note 9 (identifying summary judgment as the "first" bite at the apple, and the First Motion for Reconsideration as the "second" bite at the apple).

[19] D.I. 63 at 7–10; D.I. 67 at 5–7.

[20] *See supra* note 9.

[21] D.I. 63 at 7. It is unclear which "ruling" this relates to. The court notes that in his First Motion for Reconsideration, Mr. Carney did not argue that the court made "several plain errors of law." *See generally* D.I. 42; D.I. 49. After review of the court's denial of his First Motion for Reconsideration, Mr. Carney appears to suddenly realize that his request for relief should be consistent with the legal standard for granting such relief.

[22] D.I. 61.

[23] D.I. 35 at 9–11.

[24] *Compare* D.I. 63 at 9–10 (citing *Finkelman v. Nat'l Football League*, 810 F.3d 187, 192 n.31 (3d Cir. 2016)) *and* D.I. 67 at 6–7 (citing *Finkelman*, 810 F.3d at 192 n.31; *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006); *Lewis v. Casey*, 518 U.S. 343, 357 (1996)), with D.I. 37 at 3–4 (not citing any of these cases at summary judgment) *and* D.I. 42 at 2–4 (making these standing arguments for the first time in Mr. Carney's First Motion for Reconsideration).

were not discussed by the parties at summary judgment.[25]  Based upon these factors, the court treats Mr. Carney's new arguments as a motion for reconsideration (the "Second Motion for Reconsideration").

## II.  STANDARD OF REVIEW

### A.  Motion for Reconsideration

Motions for reconsideration are the "functional equivalent" of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e).[26]  Meeting the standard for relief under Rule 59(e) is difficult.  The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence."[27]  A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates one of the following: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted.[28]

A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made.[29]  Nor may motions for reargument or reconsideration be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided."[30]  Reargument, however, may be appropriate where a court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an

---

[25] *E.g.* D.I. 63 at 8 (citing *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015); *In Re MFW Shareholders Litig.*, 67 A.3d 496 (Del. Ch. 2013)).  Neither of these cases appear in the parties' summary judgment briefing.  D.I. 29; D.I. 32 ; D.I. 34 ; D.I. 35 ; D.I. 37 ; D.I. 38.

[26] *Jones v. Pittsburgh Nat1 Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990 (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)).

[27] *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 699, 677 (3d Cir. 1999).

[28] *Id.*

[29] *Glendon Energy Co v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

[30] *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990).

4

error not of reasoning but of apprehension."[31] The "Court should not hesitate to grant the motion when compelled to prevent manifest injustice or correct clear error."[32]

## B.    Motion to Stay

The decision to grant a stay is within the district court's discretion.[33]  A party seeking a stay pending appeal must prove that (1) it is likely to succeed on the merits of its appeal; (2) it will suffer irreparable injury absent a stay; (3) a stay will not substantially injure the other parties interested in the proceeding; and (4) a stay will not harm the public interest.[34]  A moving party "must meet the threshold for the first two 'most critical' factors:  it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief."[35]  "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested [] relief."[36]

---

[31] *Id.* at 1241 (citations omitted); *see also* D. Del. LR 7.1.5.

[32] *Brambles USA*, 735 F.Supp. at 1241 (citations omitted).

[33] *Cost Bros. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).

[34] *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

[35] *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 & n.3 (3d Cir. 2017) (footnote omitted) (citing *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)).  Although *Reilly* discusses the standard for a preliminary injunction, "the standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013); *see also Reilly*, 858 F.3d at 177 n.2 (citing *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015)) ("In the parallel stay-pending-appeal context, where the factors are the same as for the preliminary injunctions, we also follow the analytical path noted above.").

[36] *Id.*

5

## III. DISCUSSION

### A. Mr. Carney's Second Motion for Reconsideration

As discussed above, in his Motion to Stay, Mr. Carney, for the second time since the court's grant of summary judgment, makes numerous new arguments related to the substance of summary judgment that *he did not make in his summary judgment briefing.*[37] Essentially, Mr. Carney argues that he is likely to succeed on the merits, because once he is able to present the myriad new arguments researched and developed since summary judgment, the Third Circuit is bound to agree with him. Although the Third Circuit may well be inclined to give Mr. Carney another bite at the apple and allow him to make one or more of the new and ever-evolving arguments that he failed to make at summary judgment, Mr. Carney's Second Motion for Reconsideration presents a far more immediate question for the court—that is, whether the court may even consider the multitude of Mr. Carney's new arguments in deciding on the Motion to Stay.

Reconsideration may be appropriate in some scenarios. For example, the court may reconsider the arguments that Mr. Carney made at summary judgment if he identifies: (1) a change in the controlling law; (2) the need to correct a clear error of law or fact or to prevent manifest injustice; or (3) the availability of new evidence not available when the judgment was granted.[38] To the extent that Mr. Carney has identified what he contends are "plain errors of law in the [c]ourt's ruling[,]"[39] it is difficult for the court to reconcile this position with his simultaneous assertion that his "appeal

---

[37] The irony is not lost on the court that Mr. Carney is appealing a denial of reconsideration, D.I. 68, and is at the same time moving to stay final judgment by arguing that he is likely to succeed because the court made "plain errors of law," D.I. 63 at 7, which encompasses an argument for reconsideration of the court's denial of reconsideration.

[38] *Id.*

[39] D.I. 63 at 7.

6

presents substantial legal questions—in fact, issues of first impression."[40] Mr. Carney disagrees with Mr. Adams over the interpretation of the case law, and this disagreement, Mr. Carney asserts, raises issues of first impression. However, this sort of dispute is not "a clear error of law or fact" that would support reconsideration.[41] In addition, even if the above factors were to support reconsideration of the arguments Mr. Carney made at summary judgment (which they do not), nothing in the briefs or the record suggests that the court should consider any of Mr. Carney's numerous new arguments in the Motion to Stay.[42] Therefore, Mr. Carney's Second Motion for Reconsideration, D.I. 63, is DENIED.

## B. Mr. Carney's Motion to Stay Judgment

The parties agree that the court may stay judgment pending appeal and that the factors are as discussed above.[43] The court addresses the first two of the four factors, proceeding to the last two in the event that the first two weigh in favor of a stay.[44]

### 1. Likelihood of Success on the Merits

In moving for a stay, Mr. Carney avers that his "appeal presents substantial legal questions—in fact, issues of first impression[]" that justify relaxing the likelihood of success factor in its favor.[45] He also argues that, in light of persuasive case law and his new arguments, he expects to succeed on the merits.[46] In response, Mr. Adams

---

[40] D.I. 63 at 4; *see also id.* at 7 (discussing "the significant issues of first impression.").

[41] As to this second factor Mr. Carney has also not identified any resulting "manifest injustice." The first and third factors do not appear to relate to the facts at hand.

[42] *Brambles USA, Inc.*, 735 F. Supp. at 1240 (citation omitted) ("[R]eargument and reconsideration requests 'are not a substitute for an appeal from a final judgment.'"). For the purposes of the Motion to Stay, the court declines to consider these new arguments.

[43] D.I. 63 at 2–3; D.I. 66 at 1–2.

[44] *Reilly*, 858 F.3d at 179.

[45] D.I. 63 at 3–4.

[46] *Id.* at 8–10.

7

contends that Mr. Carney is unlikely to succeed on the merits, and supports this
contention with a review of its arguments from summary judgment, with which the court
has already agreed.[47]

Having denied Mr. Carney's First and Second Motions for Reconsideration, the
court declines to discuss what is effectively a reargument of the issues presented at
summary judgment. Mr. Carney has appealed the court's summary judgment ruling.[48]
He contends that his appeal presents numerous legal questions of the first impression.[49]
The court recognizes that, even though the court cannot consider Mr. Carney's new
arguments, the Third Circuit may allow him to make these new arguments in his appeal.
The Third Circuit may agree with Mr. Carney. Given the court's limited consideration of
the merits of the case at bar, that the Third Circuit may agree with Mr. Carney is
sufficient, for the purposes of the stay, "to show a *likelihood* of success on the merits
(that is, a reasonable chance, or probability, of winning) to be granted relief."[50]
Therefore, the court finds that the likelihood of success factor weighs in favor of a stay.

### 2.    Irreparable Harm

Mr. Carney paints a picture of doom and gloom, arguing that the court's decision
has "broad implications not just for Delaware, but for numerous other states, and even
the President of the United States and United States Senate, who nominate and
consent to appointment of judges."[51] Fortunately for the court, Mr. Carney also focuses
on the court's more immediate concerns of harm to the state of Delaware. According to
Mr. Carney, during his appeal to the Third Circuit, which may take a year or more, he
must continue to fill judicial offices, and these are positions with terms lasting 12

---

[47] D.I. 66 at 2–4.

[48] D.I. 68

[49] D.I. 63 at 4.

[50] *Singer Mgmt. Consultants*, 650 F.3d at 229 (emphasis in original).

[51] D.I. 63 at 4–5.

years.[52] Mr. Adams takes a different tack and argues that he would be irreparably harmed by the grant of a stay: an argument that best addresses the balance of the equities and not irreparable harm.[53]

The court agrees with Mr. Carney that it is of paramount importance that he have a mechanism in place to promptly fill any judicial vacancies. The court also agrees that it will cause irreparable harm to the people of the State of Delaware if Mr. Carney is unable to fill judicial vacancies that may arise in the time that it takes for the Third Circuit to provide clear direction to the court. Such a mechanism currently exists in the provisions of the Constitution of the State of Delaware, even though the court has determined that these provisions violate the First Amendment of the United States Constitution. A stay of judgment would preserve that mechanism.

Absent a stay, the parties would have to craft a new, temporary mechanism for appointing judges. Were Mr. Carney to develop such a mechanism on his own (which presumably he could), he rightly points out that Mr. Adams "has made [it] clear" that he intends "to seek contempt hearings if he believes the Governor (or, presumably, the Delaware General Assembly) takes political affiliation into consideration when filling vacancies."[54] This has already happened once,[55] and it is likely to happen again.[56] Some form of consent agreement could fill this gap, but no such consent is currently

---

[52] *Id.* at 5–6.

[53] D.I. 66 at 5–6.

[54] D.I. 63 at 6 (citation omitted). Mr. Carney's argues that Mr. Adams is an "individual who plainly disagrees with the scope of the Court's rulings[.]" *Id.* Apparently, Mr. Adams disagrees with the court's holding on standing. *Compare* D.I. 61 at 11–12 ("Therefore, plaintiff has prudential standing to challenge, on First Amendment grounds, the entirety of Article IV, § 3 of the Constitution of the State of Delaware."); *with* D.I. 66 at 4 ("While the Court did find that Adams satisfied the requirements of prudential standing, it did not suggest this would allow the Court to decide the 'bare minimum' provisions as to which the Court found there was no Article III standing.").

[55] D.I. 57. The court denied this motion without prejudice. D.I. 60 at 11.

[56] Clearly, contempt proceedings are not an efficient (or desirable) mechanism for filling judicial vacancies.

9

before the court, and the parties do not appear able to reach an agreement. For the foregoing reasons, irreparable harm factors weigh in favor of a stay. With the first two factors favoring a stay, the court turns to the remaining factors.

### 3. Balance of the Equities

Mr. Adams argues that he is harmed more by the grant of a stay than Mr. Carney and the State of Delaware is harmed by the denial of a stay. As discussed above, the State of Delaware would be harmed by the denial of a stay, because Mr. Carney will be unable to fill judicial vacancies. In conjunction with his brief, Mr. Adams provided an appendix documenting that he had applied to two judgeships and had been rejected from both.[57] The rejection letters indicate that he was not rejected out of hand for his party affiliation and that rather, his applications had been considered on the merits:

> The [Judicial Nominating Commission] gave careful and thorough consideration to your application and had some tough decisions to make in selecting applicants to be forwarded to Governor Carney for consideration. The election of judicial candidates is a difficult task, particularly when there are a number of well-qualified and distinguished applicants for the same position.[58]

Mr. Adams has applied to both the Superior Court and the Court of Common Pleas. Based upon these letters, as an unaffiliated voter, he does not currently appear to be harmed by the Judicial Nominating Commission's practices, and it does not appear that he will suffer harm were the court to grant the Motion to Stay. As for the larger public, including those individuals who belong to major political parties and whose applications to judicial office may be denied because of their specific party affiliation, those individuals will suffer harm under a stay. Taken together, defendant will be harmed absent a stay, plaintiff will not be harmed if a stay is granted, but there is a third group of individuals (not presently before the court and whose interests are ostensibly

---

[57] D.I. 66, ex. A.
[58] *Id.* at 9 of 10.

10

represented by Mr. Adams) whose First Amendment rights will continue to be harmed if a stay is granted. Therefore, the court finds that the balance of the equities weighs slightly against a stay.

### 4. Public Interest

There are several competing aspects of the public interest. First, the people of Delaware have an interest in filling judicial offices—with adequate judicial staffing people and entities are ensured due process and speedy trials. This weighs in favor of there being a mechanism for appointing judges. Second, the people of Delaware have written a state Constitution that reflects their long-standing will to have political balance on the judiciary. As against rules and unwritten policies linking employment to political affiliation,[59] upholding the public will pending appeal weighs in favor of a stay.

Third, the public has an interest in there being a stable mechanism for appointing judges. If the Third Circuit upholds the court's decision, and finds the political balance requirement to be a violation of the First Amendment, then a stay would mean that the mechanism would be changed once by the people of Delaware after the Third Circuit has spoken. However, if the Third Circuit reverses the court's decision and finds the political balance requirement does not violate the First Amendment, then a stay of judgment would mean that there would be no change to the mechanism for selecting appointees to judicial office. By comparison, no stay would mean continued uncertainty, additional litigation, and the potential for numerous unfilled judicial positions. The public interest in stability weighs in favor of a stay.

Fourth, there is a public interest in protecting First Amendment rights.[60] This interest weighs against a stay. Of the four interests discussed, only one weighs against a stay, and even though this is a First Amendment interest, it is opposed by public

---

[59] *E.g.*, *Elrod v. Burns*, 427 U.S. 347, 351 (1976)

[60] *Joelner v. Vill. of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004).

11

interests in due process and speedy trials. Therefore, the public interest weighs in favor of a stay.

### 5. Conclusion—Motion to Stay

Given the numerous new arguments in Mr. Carney's briefs on the Motion to Stay, the court did not consider many of these arguments as to likelihood of success on the merits. Although the court disagrees with Mr. Carney, the court nonetheless recognizes that the Third Circuit may agree with him—this chance is sufficient for him to establish a likelihood of success on the merits. Mr. Carney and the State of Delaware have an interest in filling judicial vacancies, and absent a stay, these empty judicial offices will cause the people of Delaware irreparable harm. The balance of the equities weighs slightly against a stay, but the public interest overwhelmingly supports one. Therefore, the court concludes that a stay of judgment is appropriate in the case at bar.

## IV. CONCLUSION

For the reasons discussed herein, IT IS ORDERED that defendant's Motion to Stay, D.I. 63, is GRANTED. The court's judgment Order, D.I. 39, D.I. 62, is hereby STAYED pending appeal to the United States Court of Appeals for the Third Circuit.

Dated: June 25, 2018                    /s/ Mary Pat Thynge
                                        Chief U.S. Magistrate Judge

12